**Adrian C. EICHMAN,**
**Plaintiff–Appellant,**

v.

**FOTOMAT CORPORATION, a**
**Delaware Corporation,**
**Defendant–Appellee.**

No. 87–6532.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 4, 1988.

Decided March 17, 1989.

As Amended on Denial of Rehearing and Rehearing En Banc July 13, 1989.

J. David Franklin, Franklin & Franklin, La Jolla, Cal., John M. Morris, Higgs, Fletcher & Mack, San Diego, Cal., for plaintiff-appellant, Adrian C. Eichman.

John H. L'Estrange, Jr., Wright & L'Estrange, San Diego, Cal., for defendant-appellee, Fotomat Corp.

Before FLETCHER, ALARCON and KOZINSKI, Circuit Judges.

ALARCON, Circuit Judge:

Plaintiff–Appellant, Adrian C. Eichman, appeals from two orders of the district court granting summary judgment to Defendant–Appellee, Fotomat Corporation. Eichman appeals from the order of the district court granting Fotomat's motion for partial summary judgment based on res judicata and the statute of limitations. Eichman also appeals from the subsequent order of the district court which granted Fotomat's motion for summary judgment based on the merits of the remaining state and federal claims. We affirm.

## I

## FACTS

Plaintiff–Appellant, Adrian C. Eichman, a Fotomat franchise operator, appeals from the orders of the district court granting summary judgment to Defendant–Appellee, Fotomat Corporation, based on Eichman's federal antitrust and state law claims.

This action against Fotomat is the third action brought by Eichman against Fotomat (*Eichman III*). *Eichman v. Fotomat Corp.*, 759 F.2d 1434 (9th Cir.1985). This is the second time *Eichman III* has been before this court for review.

Fotomat is a nationwide retailer of photo-processing and photographic products. Fotomat's retail business is conducted by means of small merchandising islands (kiosks) located in the parking lots of shopping centers and by means of conventional retail stores. Fotomat is both an operator and a franchisor of Fotomat retail stores. Between 1967 and 1969 Fotomat entered into a number of Fotomat franchise agreements. At one time almost half of Fotomat's stores were operated by franchisees. Now almost all the stores are operated by Fotomat.

Eichman has been a Fotomat franchisee operating one store in Chino, California, since 1968. The relationship between Eichman and Fotomat has not been smooth. The parties have been engaged in litigation since 1973. 759 F.2d at 1436. Details of the franchise agreement and other pertinent facts will be set forth where relevant to the specific arguments discussed.

## II

## STATEMENT OF THE CASE

### *Eichman I*

On July 31, 1973, Eichman sued Fotomat in California State Superior Court in San Bernardino County (*Eichman I*). *Eichman v. Fotomat Corp.*, 147 Cal.App.3d 1170, 197 Cal.Rptr. 612 (1983). Eichman alleged that Fotomat breached the franchise agreement and violated California's Unfair Trade Practices Act, Cal.Bus. & Prof.Code § 17200 *et seq.* 147 Cal.App.3d 1170, 1173, 197 Cal.Rptr. 612. Eichman alleged that Fotomat sold photoprocessing to Eichman's franchise store at prices higher than the prices available to company stores, failed to advertise properly for franchise stores, placed company stores unreasonably close to Eichman's store, and fraudulently induced Eichman to enter into the franchise agreement by representing that Fotomat's company stores would not compete with Eichman's store. 147 Cal. App.3d at 1173, 197 Cal.Rptr. 612. On September 7, 1977, Eichman entered into a consent judgment with Fotomat for $7,500 pursuant to California Code of Civil Procedure Section 998. In May 1978, the Superior Court entered the judgment nunc pro tunc as of September 7, 1977.

### *Eichman II*

On April 21, 1978, Eichman filed his second action (*Eichman II*) against Fotomat in California State Superior Court in San Diego. The complaint in *Eichman II* was more specific, but the facts alleged were basically the same. Eichman alleged hidden markups in violation of the franchise agreement; sales to company stores at lower prices than those offered to franchise stores; tying of processing, merchandise, and kiosk leases to franchise licenses; fraudulent inducement to enter into the franchise agreement by false representations; and excessive franchise royalty fees. The complaint stated causes of action for breach of contract, fraud, conversion, breach of fiduciary duty, restraint of trade in violation of California law, and monopolization and attempted monopolization in violation of California law. Eichman also requested an accounting and declaratory relief.

Fotomat demurred to all causes of action in the complaint except the accounting and declaratory relief counts on the ground that *Eichman I* was res judicata. The San Diego Superior Court sustained the demurrer with leave to amend. Eichman amended the complaint adding allegations that Fotomat fraudulently concealed the full extent of its wrongs until after the judgment was entered in *Eichman I*. Fotomat demurred again on the ground that *Eichman I* was res judicata. On February 27, 1979, the superior court sustained the demurrer without leave to amend as to all counts, except those for an accounting and declaratory relief, on the ground that *Eichman I* was res judicata. Eichman dismissed the remaining claims in order to pursue an appeal in the state system.

On October 14, 1983, the California Court of Appeal affirmed the superior court judgment. *Eichman v. Fotomat Corp.*, 147 Cal.App.3d 1170, 197 Cal.Rptr. 612 (1983). The California Court of Appeal held that *Eichman I* precluded Eichman from suing on claims that he had already settled. The court rejected Eichman's fraudulent concealment argument stating that ignorance · of evidence, which the court stated Eichman should have discovered through due diligence, would not negate the application of res judicata. 147 Cal.App.3d at 1176, 197 Cal.Rptr. 612.

*Eichman III*

While *Eichman II* was pending on appeal in the state system, Eichman filed the present case, *Eichman III*, in the United States District Court for the Southern District of California on June 19, 1981. The facts alleged in the *Eichman III* complaint are substantially the same as those alleged in *Eichman II.* However, Eichman has expanded his theories of recovery alleging claims under the Sherman Antitrust Act, 15 U.S.C. §§ 1–7, and the Clayton Act, 15 U.S.C. § 12–27, and a number of pendent state law claims. On April 21, 1982, the district court dismissed all claims except the two state law claims for an accounting and for declaratory judgment on the ground that *Eichman I* was res judicata to Eichman's federal suit. The parties stipulated to the dismissal of the two remaining state law claims for lack of subject matter jurisdiction. Eichman appealed to this court.

On May 10, 1985, we reversed. We held that *Eichman I* only precluded state claims that were based on conduct occurring prior to September 7, 1977. *Eichman v. Fotomat Corp.*, 759 F.2d 1434, 1439 (9th Cir. 1985). We rejected Eichman's argument that Fotomat's fraudulent concealment should preclude the application of res judicata as to his pre September 7, 1977 claims. *Id.* at 1438. Finally, we held that *Eichman I* was not res judicata as to Eichman's federal antitrust claims because the California state court in *Eichman I* lacked subject matter jurisdiction over the federal antitrust claims. *Id.* at 1437.

On November 1, 1985, Eichman filed a second amended complaint. On December 3, 1985, Fotomat filed a motion for summary judgment. Rather than ruling on the motion, the district court instructed Fotomat to refile the motion and address only the issues of res judicata and the statute of limitations. Eichman filed a third amended complaint on June 20, 1986.

On July 21, 1986, Fotomat filed a motion for partial summary judgment limited to the issues of res judicata and the statute of limitations. On January 7, 1987, the district court granted Fotomat's motion. On February 2, 1987, Fotomat filed a motion for summary judgment challenging the merits of the remaining claims. Fotomat also filed a motion for sanctions. Eichman filed an opposition to the motion for summary judgment and filed a cross motion for sanctions. The district court granted Fotomat's motion for summary judgment and dismissed the remaining claims on September 14, 1987. The district court denied both motions for sanctions. Judgment was entered against Eichman on November 2, 1987. Eichman filed a timely notice of appeal on October 20, 1987.

*Eichman IV and V*

While *Eichman II* was still pending in the California Court of Appeal and shortly after the district court's oral ruling that *Eichman III* would be dismissed, Eichman filed *Eichman IV* against Fotomat in San Diego Superior Court on March 10, 1982. However, Eichman did not serve Fotomat with the complaint. On January 13, 1984, Eichman filed *Eichman V* against Fotomat in San Diego Superior Court. Fotomat removed *Eichman V* to federal court and filed an answer.

In January 1985, Fotomat received a copy of the complaint in *Eichman IV.* Fotomat removed the case to federal district court. Fotomat made a motion for summary judgment which was granted by the district court on April 2, 1985. Eichman appealed. After we reversed and remanded *Eichman III*, Fotomat agreed that Eichman should move to dismiss *Eichman IV* and *V* without prejudice. *Eichman V* was dismissed without prejudice on July 26,

1985. *Eichman IV* was dismissed without prejudice on July 31, 1985.

## III

## DISCUSSION

### Jurisdiction

The district court had jurisdiction over the federal antitrust claims pursuant to 28 U.S.C. §§ 1331(a) and 1337(a). The district court had pendent jurisdiction over the state law claims. Because a judgment was entered dismissing this action, we have jurisdiction pursuant to 28 U.S.C. § 1291.

### Standard of Review

We review independently an order granting summary judgment. *Medallion Television Enterprises v. SelecTV of California, Inc.*, 833 F.2d 1360, 1362 (9th Cir. 1987). We will affirm the district court's judgment if the pleadings and supporting material show the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.*

## IV

## STATUTE OF LIMITATIONS

The district court granted Fotomat's motion for partial summary judgment based on the statute of limitations as to portions of Eichman's federal claims and state law claims. We review independently the dismissal of a claim based on the statute of limitations. *Donoghue v. Orange County,* 848 F.2d 926, 929 (9th Cir.1987).

### A. Equitable Tolling

Eichman contends that the proceedings in *Eichman I* and *Eichman II* should equitably toll the statute of limitations with respect to all claims. Eichman relies on the fact that the complaints in *Eichman I, II,* and *III* contain virtually the same factual allegations.

The district court held that equitable tolling did not apply. The district court stated that even if the doctrine applied, the doctrine is only applied when the interests of justice require its application after a bal-

ancing of the injustice to the plaintiff and prejudice to the defendant. The district court found prejudice to the defendant due to the death of a witness. The district court found there would be no injustice to the plaintiff because he did not diligently prosecute *Eichman II.*

Equitable tolling applies when the plaintiff seeks a different remedy for the same wrong. However, equitable tolling is not applicable when a plaintiff has pursued a remedy as to only one of several distinct wrongs. *Donoghue*, 848 F.2d at 931. Eichman contends that the claims and factual allegations in the present case (*Eichman III*) are the same as the claims and allegations in *Eichman II.* The California Court of Appeal held that the claims in *Eichman II* were based on claims arising prior to the consent judgment. *Eichman v. Fotomat*, 147 Cal.App.3d 1170, 1177 (1983). Accordingly, the claims in *Eichman III* were based on actions that occurred prior to the consent judgment. Therefore, to the extent the claims in *Eichman III* are the same claims as the claims in *Eichman II,* then they are barred by the doctrine of res judicata, because the California Court of Appeal held that the claims in *Eichman II* were barred by the res judicata effect of the consent judgment. *Id.*

To the extent Eichman's claims and allegations are based on distinct wrongs that occurred after September 7, 1977, which were not contained in the *Eichman II* action, equitable tolling does not apply because Eichman is seeking the same remedy for a different wrong. Eichman cannot have it both ways. To the extent *Eichman III* seeks redress for the same wrongs as alleged in *Eichman II,* the state law claims are barred by res judicata. To the extent that the state law claims in *Eichman III* are based on distinct wrongs occurring after September 7, 1977, equitable tolling does not apply.

Eichman also claims that the pendency of the state court action in *Eichman II* equitably tolled the statute of limitations with respect to the federal antitrust claims

in the matter before this court. We rejected a similar argument in *Pace Industries, Inc. v. Three Phoenix Co.*, 813 F.2d 234, 240–41 (9th Cir.1987); *see also, Mir. v. Little Co. of Mary Hospital*, 844 F.2d 646, 649 (9th Cir.1988); *accord, Drumm v. Sizeler Realty Co. Inc.*, 817 F.2d 1195, 1197 (5th Cir.1987). When a plaintiff has both state and federal law antitrust claims, he has the discretion to pursue a remedy in state or federal court. If the plaintiff chooses to pursue a state remedy first, the plaintiff may not invoke the doctrine of equitable tolling. If the filing of a state antitrust claim could equitably toll the federal antitrust statute of limitations, this would result in a judicially mandated tacking of state limitations periods onto the federal limits. *Drumm*, 817 F.2d at 1197. The result would be capricious because of the different state limitation periods. *Id.* Therefore, the doctrine of equitable tolling does not apply to Eichman's federal antitrust claims either.

## B. *Fraudulent Concealment*

Eichman contends that the statute of limitations should be tolled because Fotomat fraudulently concealed material facts relating to his claims. In *Eichman II*, Eichman argued before the San Diego Superior Court that the judgment in *Eichman I* should not have a res judicata effect because of fraudulent concealment by Fotomat. The San Diego Superior Court rejected Eichman's argument and dismissed the complaint on res judicata grounds.

Before the California Court of Appeal, Eichman argued that fraudulent concealment should preclude the application of res judicata. He also argued that the San Diego Superior Court erred when it decided factual issues concerning fraudulent concealment in a demurrer proceeding. The California Court of Appeal rejected Eichman's argument and held that the alleged fraudulent concealment did not suspend the res judicata effect of *Eichman I*. *Eichman*, 147 Cal.App.3d at 1176, 197 Cal.Rptr. 612. Furthermore, the court stated that by exercising due diligence, Eichman would have discovered the facts Fotomat allegedly concealed. *Id.*

In the district court before Judge Keep, Eichman again argued in the instant matter that *Eichman I* was not res judicata because Fotomat fraudulently concealed the true facts. Eichman also argued that fraudulent concealment tolled the statute of limitations. Judge Keep rejected Eichman's arguments and dismissed all of Eichman's claims, except the claims for declaratory relief and an accounting, based on res judicata. Judge Keep further stated that Eichman's fraudulent concealment claims were "bald faced assertions" which were "untenable on their face." The district court took judicial notice of the court files from 1973 (*Eichman I*) and 1978 (*Eichman II*) and stated that the fraudulent concealment allegations were "ludicrous when … compared to the allegations of the 1973 complaint [*Eichman I*]."

In his appeal before this court, Eichman relied upon fraudulent concealment. We rejected this argument. We noted that the California Court of Appeal rejected this argument, and stated that Eichman could have discovered the facts through the exercise of due diligence. *Eichman*, 759 F.2d at 1438.

Before the district court, Eichman again asserted that res judicata and the statute of limitations should not bar his claims due to fraudulent concealment. Eichman argued that he had been precluded from presenting evidence to establish fraudulent concealment at the hearings on Fotomat's prior motions to dismiss for failure to state a claim. Judge Rhoades asked whether Mr. Franklin, Eichman's counsel, had presented this argument in the other proceedings. Mr. Franklin stated that he had. Judge Rhoades then suggested that Mr. Franklin appeared to be bound by this court's determination and Judge Keep's prior ruling. Judge Rhoades instructed Mr. Franklin to brief the question. On December 17, 1986, Judge Rhoades ruled as follows:

To the extent that the plaintiff seeks to avoid the clear language of the Ninth Circuit opinion, *on either res judicata, or application of the statute of limita-*

*tions,* by urging the doctrine of fraudulent concealment on the court—that's bad English—the fraudulent concealment on Mr. Eichman, I reject this out of hand. Just as Judge Keep, and the Ninth Circuit and the California Appeals Court before me, I find that this theory is meritless.

The record before me indicates that the plaintiff, even if he might not have known certain facts, should have been aware of those facts if he or his counsel had exercised normal diligence in the prosecution of his prior lawsuits.

Moreover, the plaintiff has not submitted to the court any evidence that would change the situation as it appeared to the previous courts that have ruled on this issue. (emphasis added).

Before this court, Eichman again argues that Fotomat's fraudulent concealment tolled the statute of limitations. Eichman contends that none of the prior rulings regarding fraudulent concealment are applicable because he had not previously presented the statute of limitations issue to any court. The record shows, however, that Eichman presented this argument to Judge Keep before his prior appeal to this court. We did not reach this issue in disposing of the prior appeal.

■ Our prior decision is the law of this case. *Waggoner v. Dallaire,* 767 F.2d 589, 593 (9th Cir.1985) *cert. denied,* 475 U.S. 1064, 106 S.Ct. 1374, 89 L.Ed.2d 601 (1986). Under the law of the case doctrine a decision of the court in a prior appeal must be followed in all subsequent proceedings in the same case. *Id.* The law of the case doctrine applies when a federal court reviews matters previously considered in state court involving the same parties. *Gage v. General Motors Corp.,* 796 F.2d 345, 349 (10th Cir.1986). The doctrine of law of the case "encompasses a court's explicit decisions as well as those issues decided by necessary implications." *Williamsburg Wax Museum v. Historic Figures, Inc.,* 810 F.2d 243, 250 (D.C.Cir. 1987). The law of the case controls unless the first decision is clearly erroneous and would result in manifest injustice, an intervening change in the law has occurred, or the evidence on remand is substantially different. *Waggoner,* 767 F.2d at 593.

■ The various courts' findings are clear. Eichman through due diligence should have discovered his claims prior to the date of the consent judgment, September 7, 1977. *Eichman,* 147 Cal.App.3d at 1176, 197 Cal.Rptr. 612; *Eichman,* 759 F.2d at 1438. If Eichman could have discovered the facts prior to September 1977, it makes no difference whether the claim is barred by res judicata or the statute of limitations. Our conclusion that Eichman had failed to demonstrate fraudulent concealment to avoid the doctrine of res judicata in our prior review of this matter was equally applicable to his argument that the statute of limitations should not bar his claims.

Our independent review of the record has persuaded us that no new evidence of fraudulent concealment was presented to the district court. The evidence relied upon by Eichman consists mainly of responses to interrogatories and requests for admissions that were obtained during discovery prior to the consent judgment in *Eichman I.*

Eichman appears to argue that in *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.,* 858 F.2d 499 (9th Cir.1987), this circuit has adopted a new rule regarding fraudulent concealment that makes the prior rulings on this issue inapplicable. In *Conmar,* we held that the existence of an indictment and an unpublished antitrust complaint did not establish as a matter of law that a plaintiff should have been put on notice of his or her claims. *Id.* at 503–04. We also stated that where a plaintiff's suspicions have been or should have been excited, no fraudulent concealment can be claimed where the plaintiff through due diligence could have discovered further information. *Id.* at 505. Because we found in *Conmar* that there was a genuine issue of material fact whether the facts publicly available were sufficient to excite Conmar's inquiry, we held that Conmar did not have to show due diligence to survive summary judgment. *Id.* at 505.

Eichman contends that this court and the California Court of Appeal improperly charged him with notice of the allegations in the *King* complaint which was filed against Fotomat a year before Eichman entered into the consent judgment with Fotomat in *Eichman I.* The record indicates that this court and the California Court of Appeal relied on the *King* case in holding that fraudulent concealment had not been shown.

The California Court of Appeal held that Eichman should have discovered his claims through the exercise of due diligence. The California Court of Appeal stated that Eichman indicated in answers to interrogatories that he would be calling a number of witnesses who were also plaintiffs in the *King* case against Fotomat. 147 Cal.App. 3d at 1176, 197 Cal.Rptr. 612. The court stated that Eichman could have questioned these plaintiffs in *King* about their claims against Fotomat or could have discovered Fotomat was engaged in litigation with other franchisees through interrogatories. *Id.*

Similarly, in our prior decision we stated that Eichman appeared to be acquainted with other franchise owners who were involved in litigation with Fotomat. 759 F.2d at 1438. We also pointed out that Eichman had engaged in four years of discovery with Fotomat before entering into the consent judgment in *Eichman I. Id.*

Our decision in *Conmar* does not require a reversal in this case. First, although Eichman argues that he did not know any of the plaintiffs in the *King* complaint, a number of the plaintiffs in *King* were scheduled to be called as witnesses in his case as part of his evidence against Fotomat. Second, the *King* complaint was not the only information that should have put Eichman on notice of the existence of other claims against Fotomat. Unlike the situation in the *Conmar* case, a lengthy published opinion of the United States District Court for the Southern District of Indiana in a case against Fotomat was published four months before Eichman entered into the consent judgment in *Eichman I. Photovest Corp. v. Fotomat Corp.,* 1977–1 Trade Cases (CCH) Paragraph 61,529, 1977

WL 1432 (S.D.Ind.1977) *aff'd in part and rev'd in part,* 606 F.2d 704 (7th Cir.1979) *cert. denied,* 445 U.S. 917, 100 S.Ct. 1278, 63 L.Ed.2d 601 (1980). The allegations in *Photovest* are almost identical to Eichman's allegations in *Eichman II* and *III.* Therefore, although the *King* complaint may not have "excited" Eichman's suspicions, the *Photovest* opinion should have. Through the exercise of due diligence Eichman could have discovered the existence of these facts. The district court did not err when it rejected Eichman's fraudulent concealment claim.

### C. Statute of Limitation Rulings Not Challenged

The district court in the first order granting partial summary judgment set forth each claim, the relevant statute of limitations and the cut off date for claims within the statutory period. The following rulings of the district court are not challenged on appeal:

| | |
|---|---|
| Federal Antitrust Claims: | Four year statute of limitations. 15 U.S.C. § 15(b). Claims prior to June 19, 1977, are time barred. |
| Breach of Fiduciary Duty: | Two year statute of limitations. Cal.Civ.Proc.Code, § 339(1). Claims prior to June 19, 1979, are time barred. |
| Intentional Interference With Prospective Business Advantage: | Two year statute of limitations. Cal.Civ.Proc.Code § 339(1). Claims prior to June 19, 1979, are time barred. |

Accordingly, we do not reach the validity of these rulings.

### D. Statute of Limitation Rulings Challenged

#### 1. Breach of Contract

■ The district court held that the four year statute of limitations of California Code of Civil Procedure § 337(1) (West 1982) governed the breach of contract claim and barred all claims prior to June 19, 1977. Fotomat does not challenge the application of the four year statute of limitations, but contends that all claims prior to November 1, 1981, are time barred because the claim of overcharging for film and film processing was not alleged until the filing of the second amended complaint on November 1,

1985. Fotomat contends that since the breach of contract claim with regard to overcharges involves a different transaction, it does not relate back to the original filing date. Fed.R.Civ.P. 15(c).

Federal Rule of Civil Procedure, 15(c) provides in relevant part, "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." In pleading his antitrust claims in his original complaint in *Eichman III*, Eichman alleged that he was overcharged for film and film processing. Therefore, Eichman's breach of contract claim for film and film processing related back to the original complaint in *Eichman III*.

The district court did not err when it counted back four years from the date of the original pleading. However, four years prior to the date of the original pleading is June 19, 1977. Under our prior decision in this matter, state claims based on facts prior to September 7, 1977, are barred by the doctrine of res judicata. 759 F.2d at 1438–39. Therefore, Eichman's breach of contract claims accruing prior to September 7, 1977, are barred.

### 2. Unfair Business Practices

■ The district court held that the two year statute of limitations of California Code of Civil Procedure § 339(1) applied to Eichman's unfair business practice claims and barred claims based on facts occuring prior to June 19, 1979. Eichman contends that the applicable statute of limitations is the four year statute of limitations of California Business and Professions Code § 17208 (West 1987).

Section 17208 prescribes the statute of limitations for claims under the California Unfair Business Practices Act, California Business and Professions Code § 17200 *et seq.* (West 1987). Therefore, the district court should have applied the four year statute of limitations of section 17208. Accordingly, only those claims based on conduct that occurred prior to June 19, 1977,

are barred by the statute of limitations. As discussed above, however, state claims arising prior to September 7, 1977, are barred by the doctrine of res judicata.

### 3. Breach of the Implied Covenant of Good Faith and Fair Dealing

The district court held that the two year statute of limitations of California Code of Civil Procedure § 339(1) applied to Eichman's breach of the implied covenant of good faith and fair dealing claims. Eichman contends that because a claim for breach of the covenant of good faith and fair dealing sounds in both contract and tort, the four year statute of limitations for contract claims, California Code of Civil Procedure § 337(1), should apply.

It is unclear to us what the applicable statute of limitations under California law is for a claim of a breach of the covenant of good faith and fair dealing arising out of a commercial contract. In *Eisenberg v. Insurance Co. of North America*, 815 F.2d 1285, 1291–92 (9th Cir.1987), we interpreted California law and concluded that the two year statute of limitations of California Code of Civil Procedure § 339(1) applied to a claim of a breach of the covenant of good faith and fair dealing arising from an employment contract. *Id.* Eichman contends that *Eisenberg* is in conflict with the California Court of Appeal's decision in *Frazier v. Metropolitan Life, Ins. Co.*, 169 Cal. App.3d 90, 214 Cal.Rptr. 883 (1985). In *Frazier*, the California Court of Appeal held that a plaintiff who alleged a breach of the implied covenant of good faith and fair dealing arising out of an insurance contract could elect to proceed on a contract or a tort theory. *Id.* at 102, 214 Cal.Rptr. 883. If the plaintiff proceeded on a tort theory, her action was barred by the one year statute of limitations of California Code of Civil Procedure § 340(3). If the plaintiff elected to proceed on a contract theory, her action was within the four year statute of limitations of California Code of Civil Procedure § 337(1). *Id.*

We need not resolve the question of the applicable statute of limitations, because we conclude, *infra*, that the district court

properly granted Fotomat summary judgment on the merits of this claim.

### 4. Lease-tie Antitrust Claim

Eichman was obligated under the franchise agreement and lease agreement to lease the Fotomat merchandising island from Fotomat. Eichman claimed this lease agreement was an unlawful tying agreement in violation of the antitrust laws. The lease agreement was signed in 1968. The district court did not reach the merits of this claim because it held that the four year statute of limitations of the Clayton Act, 15 U.S.C. 15b, barred the claim. Eichman contends that the lease tying agreement was a continuing violation of the antitrust laws which is not barred by the statute of limitations. Eichman contends that each payment under the lease was a new injury for purposes of the statute of limitations.

When a plaintiff alleges a continuing violation of the law, an overt act is required to restart the statute of limitations and the statute of limitations runs from the last overt act. *Pace Industries, Inc.*, 813 F.2d at 237. Under certain circumstances the active enforcement of an illegal contract may constitute an overt act which will restart the statute of limitations. *Id.* However, the passive receipt of profits from an illegal contract by an antitrust defendant is not an overt act of enforcement which will restart the statute of limitations. *Aurora Enterprises v. National Broadcasting Co.*, 688 F.2d 689, 694 (9th Cir.1982).

To restart the statute of limitations in a tying situation, Eichman must show that Fotomat "had the ability [to] and actually did enforce the tie" during the limitations period. *Airweld, Inc. v. Arco, Inc.*, 742 F.2d 1184, 1190 (9th Cir.1984). The mere fact that Eichman has made lease payments to Fotomat since 1968 does not establish Fotomat's ability to enforce the tie absent voluntary cooperation by Eichman.

Eichman relies on our decision in *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 512 F.2d 1264, 1270 (9th Cir. 1975) to support his claim that the lease-tie was a continuing antitrust violation. That decision, however, is distinguishable in two crucial respects. First, the suit originated as an action by the antitrust cross-defendant to enforce the contract. *Id.* at 1269. Here, Fotomat is not attempting to enforce the lease agreement. Second, the illegal contract in *Twin City Sportservice* was originally entered into by the antitrust plaintiff's predecessor in interest. The plaintiff actively attempted to avoid being bound by the contract. *Id.* Here, Eichman entered into the lease himself, and does not assert that he has ever sought to avoid compliance. We are persuaded that the district court properly found that Eichman's lease-tying claim was barred by the statute of limitations.

## V

## MERITS OF THE CLAIMS

### A. Rulings Not Challenged

The district court granted Fotomat's motion for summary judgment on the following claims which are not challenged on appeal: (1) the antitrust claims dealing with the tying of the Fotomat trademark and license to services and advertising; (2) the state law claim for breach of fiduciary duty; and (3) the state law claim of intentional interference with prospective business advantage with regard to notification and participation in promotions. Accordingly, we do not reach the validity of these rulings.

### B. Rulings Challenged

Relying on the Supreme Court's decision in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the district court granted Fotomat summary judgment on the merits of Eichman's claims principally based on findings that Eichman failed to establish an essential element of each cause of action. The Supreme Court stated in *Celotex* that Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

### 1. Restraint of Trade Sherman Act § 1

■ Eichman alleged a conspiracy between Fotomat and its merchandise suppliers, third party photoprocessors, other Fotomat franchisees and other unknown persons. The alleged agreement was "to restrain interstate commerce in film, film processing, photographic equipment and video goods and services." The object of the alleged conspiracy was to eliminate Fotomat franchisees and other drive-thru operations as competitors and to force Fotomat franchisees to terminate their franchise agreements with Fotomat. Third party processors allegedly benefited from the alleged agreement because, "the processors were clearly aware of the fact that if Fotomat owned the franchise stores, the third party processors would not have to worry about losing the large franchise processing volumes." Eichman alleges that Fotomat coerced the third party processors by threatening to cease doing business with them if they accepted business work orders from other competitors. The district court found that Eichman failed to identify any person or business entity who conspired with Fotomat. The district court concluded that the only possible conspirators were third party processors. The alleged conduct, however, occurred prior to June 19, 1977.

To establish a violation of Sherman Act § 1, 15 U.S.C. § 1, a party must present evidence of the existence of three elements: (1) an agreement, conspiracy, or combination among two or more persons or distinct business entities; (2) which is intended to harm or unreasonably restrain competition; and (3) which actually causes injury to competition, beyond the impact on the claimant, within a field of commerce in which the claimant is engaged (i.e., "antitrust injury"). *McGlinchy v. Shell Chemical Co.,* 845 F.2d 802, 811 (9th Cir.1988).

The Supreme Court has stated that, "if the factual context renders [the] claim implausible—if the claim is one that simply makes no economic sense—[the claimant] must come forward with more persuasive evidence to support their claim than would otherwise be necessary." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The Court further stated, "to survive a motion for summary judgment ... a plaintiff seeking damages for a violation of § 1 must present evidence 'that tends to exclude the possibility' that the alleged conspirators acted independently." *Id.* at 588. *Matsushita* applies when the party seeking to avoid summary judgment relies exclusively on inferences capable of both lawful and unlawful behavior drawn from circumstantial evidence. *Id.* at 588; *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n,* 809 F.2d 626, 632 (9th Cir.1987).

Eichman did not present any direct evidence of a conspiracy between Fotomat and its merchandise suppliers, third party photoprocessors, other Fotomat franchisees or other unknown persons. Eichman asks us to infer unlawful behavior on the part of Fotomat from the circumstantial evidence he presented.

Most of the evidence in the record concerns conduct and communications regarding discounts and photoprocessing prices prior to 1977. The facts indicate that a conspiracy between Fotomat and third party processors to drive franchisees out of business after the early 1970's is implausible. In approximately 1973 or 1974 Fotomat's wholly owned subsidiary, Fotomat Labs, started to take over the bulk of Fotomat's processing. As a result, third party processors started to lose business from Fotomat. Thus, even assuming arguendo that Fotomat and third party processors conspired to eliminate franchisees in the early 1970's, the third party processors would have no incentive to continue the conspiracy after 1974. After 1974 it would be in the third party processors' best interest to have the franchisees remain in business because as Fotomat reacquired fran-

chises the third party processors lost business. As long as the franchisees remained in business, third party processors would have them as potential customers.

Although Fotomat switched to Fotomat Labs for photoprocessing in 1973 or 1974, it continued to use third party processors for chrome processing. The evidence shows that after 1977 Fotomat received proposals and entered into agreements with third party chrome processors for trade discounts. Eichman has not submitted any evidence, however, that these discounts were illegal or were not passed on to the franchisees. In January 1977, Fotomat refunded each franchisee the discounts that Fotomat had received from 1971 through 1976. By 1977 Fotomat was faced with a number of lawsuits brought by franchisees. Given these facts and Eichman's lack of evidence regarding what Fotomat paid to third party processors and what franchisees were charged during the relevant time period, this conspiracy claim fails.

The evidence shows that Eichman changed processors in 1976. Thus, even assuming arguendo that Fotomat and third party chrome processors conspired to overcharge franchisees after 1976, Eichman could not show antitrust injury. Therefore, Fotomat would be entitled to summary judgment. See McGlinchy, 845 F.2d at 808–809 (summary judgment was proper where appellant did not make a showing sufficient to establish the amount, causation, or fact of damages).

Although Eichman continued to purchase film from Fotomat after 1976, a review of the record indicates that Eichman failed to present evidence establishing a conspiracy between Fotomat and merchandise suppliers or Fotomat and other franchisees or "other persons." In addition, Eichman has presented no evidence of a conspiracy to "overlap" his franchise store. If Fotomat intentionally overlapped stores in Eichman's area, Eichman has not pointed to any co-conspirators in this alleged scheme. Therefore, the district court properly dismissed Eichman's Sherman Act § 1 claim for restraint of trade.

### 2. Conspiracy to Monopolize Sherman Act § 2

██ With regard to Eichman's conspiracy to monopolize claim under Sherman Act § 2, Eichman merely refers us to his conspiracy in restraint of trade argument under Sherman Act § 1. The district court stated that the elements of a conspiracy to monopolize claim are different from a claim of a conspiracy in restraint of trade, however, they both require concerted activity. The district court found that Eichman failed to produce evidence of concerted activity.

To establish a Section 2 conspiracy to monopolize a party must present evidence of the existence of at two least elements: (1) a conspiracy and (2) a purpose to achieve monopoly power. See Syufy Enterprises v. American Multicinema, Inc., 793 F.2d 990, 1000 (9th Cir.1986), cert. denied, 479 U.S. 1031, 1034, 107 S.Ct. 876, 884, 93 L.Ed.2d 830, 838 (1987). Some courts also require a party to show a specific intent to injure the plaintiff as well as to monopolize. Hill Aircraft & Leasing Corp. v. Fulton County, Georgia, 561 F.Supp. 667, 677 (N.D.Ga.) aff'd without opinion, 729 F.2d 1467 (11th Cir.1982); See Associated Radio Serv. Co. v. Page Airways, Inc., 624 F.2d 1342, 1356–57 n. 24 (5th Cir.1980) (jury instruction setting forth elements of a conspiracy to monopolize claim) cert. denied, 450 U.S. 1030, 101 S.Ct. 1740, 68 L.Ed.2d 226 (1981).

It is unclear in this Circuit whether a showing of specific intent is necessary to establish a conspiracy to monopolize under Section 2. See Syufy Enterprises, 793 F.2d at 1000–01. Cf. Hunt–Wesson Foods, Inc. v. Ragu Foods, Inc., 627 F.2d 919, 926 (9th Cir.1980) cert. denied, 450 U.S. 921, 101 S.Ct. 1369, 67 L.Ed.2d 348 (1981). However, we do not need to decide this question.

Eichman's conspiracy to restrain trade claim under Sherman Act § 1 failed because he did not present evidence of concerted activity. Eichman's conspiracy to monopolize claim under § 2 also fails due to his failure to present evidence of concerted activity. Therefore, the district

court properly entered summary judgment on the conspiracy to monopolize claim.

### 3. Attempt to Monopolize and Monopolization

The district court dismissed Eichman's monopolization and attempt to monopolize claims finding that Eichman had failed to meet his burden of establishing a relevant market and had failed establish antitrust injury. Eichman challenges the district court's findings.

■■■■ To avoid summary judgment on the attempt to monopolize claim, Eichman had to present evidence of the existence of the following elements: (1) a specific intent to control prices or destroy competition in some part of commerce; (2) predatory or anti-competitive conduct directed toward accomplishing that purpose; (3) a dangerous probability of success; and (4) causal anti-trust injury. *Rickards v. Canine Eye Registration Foundation, Inc.*, 783 F.2d 1329 (9thCir.), *cert. denied*, 479 U.S. 851, 107 S.Ct. 180, 93 L.Ed.2d 115 (1986). To establish a monopolization claim in violation of Sherman Act § 2, 15 U.S.C. § 2, Eichman was required to produce evidence of Fotomat's (1) possession of monopoly power in a relevant market; (2) willful acquisition or maintenance ("use") of that power; and (3) causal antitrust injury. *Catlin v. Washington Energy Co.*, 791 F.2d 1343 (9thCir.1986).

■■■■ Pursuant to the Supreme Court's decision in *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977), Eichman was required to establish antitrust injury, i.e. "injury of the type the antitrust laws were meant to prevent." 429 U.S. at 489, 97 S.Ct. at 697. Eichman failed to do this. Eichman merely states, "appellant's evidence clearly shows that Fotomat, through predatory conduct, has eliminated many of its drive-thru competitors, including 372 out of 375 Fotomat franchisees."

However, Eichman has not presented any evidence establishing injury to himself as a result of the alleged anti-trust violation. Eichman has no standing to claim an antitrust violation which allegedly injured other franchisees. He must show that he was injured by the anticompetitive conduct of Fotomat. *See Matsushita Electric Industrial Co.*, 475 U.S. at 586, 106 S.Ct. at 1355 ("[plaintiffs] must show an injury to them[selves] resulting from the alleged illegal conduct").

Eichman states only that there was a decline in his store's sales. However, a drop in gross sales does not establish antitrust injury in the absence of a showing that the reduction in sales is the result of an antitrust violation. Eichman has made no such showing of causation. Therefore, Eichman did not meet his burden of establishing antitrust injury and the district court properly entered summary judgment.

### 4. Breach of Contract

Eichman alleges the following five breaches of the franchise agreement: (1) overlapping the marketing area of Eichman's store; (2) refusal to permit Eichman to relocate his low volume store; (3) overcharging for film, film processing and merchandise; (4) failure to provide adequate maintenance to Eichman's store; and (5) failure to provide Eichman with notice of store promotions.

#### a. Market Overlap Claim

■■ Eichman contends that Fotomat breached the franchise agreement by placing company stores in his market area. The district court held that Eichman presented no relevant evidence supporting a finding that the contract granted him an exclusive territory or market area. The district court further stated that it is the objective intent as evidenced by the words of the contract which controls citing *Titan Group, Inc. v. Sonoma Valley County Sanitation District*, 164 Cal.App.3d 1122, 1127, 211 Cal.Rptr. 62 (1985). *Titan* further provides that the undisclosed intentions of the parties are immaterial. *Id.*

Eichman claims that section F–1 of the franchise agreement provides him with an exclusive marketing area. Section F–1 provides:

GRANT OF FRANCHISE

FOTOMAT hereby grants to OPERA-TOR the exclusive rights to operate as a retailer of photographic supplies and photoprocessing services using the FO-TOMAT name, the FOTOMAT trade names and trade styles and other materials distinctive to the FOTOMAT merchandising concept in a FOTOMAT MER-CHANDISING ISLAND to be located as described in Exhibit "A" attached hereto and made a part hereof.

The language is clear and unambiguous. No exclusive market area or territory is set forth in the contract. The exclusive rights granted to Eichman as a franchisee are the rights to use Fotomat's trademark and trade dress at the particular location where his kiosk is located.

■ Although Eichman properly points out that acts of the parties subsequent to the execution of a contract may be taken into consideration to determine the interpretation of a contract where the contract is ambiguous, Eichman fails to mention that this practical construction doctrine may not be used where the contract is unambiguous. *Crestview Cemetery Association v. Dieden,* 54 Cal.2d 744, 754, 356 P.2d 171, 8 Cal.Rptr. 427 (1960). Because the language in Section F–1 of the franchise agreement is unambiguous the practical construction doctrine does not apply.

■ Moreover, we have stated previously that as a general rule where there is no express grant of an exclusive territory in a contract or franchise agreement, none will be impliedly read into the contract. *Pacific Supply Cooperative v. Farmers Union Central Exchange, Inc.,* 318 F.2d 894, 907 (9th Cir.1963), *cert. denied,* 375 U.S. 965, 84 S.Ct. 483, 11 L.Ed.2d 414 (1964); *See also Stockton Dry Goods Co. v. Girsh,* 36 Cal.2d 677, 680–81, 227 P.2d 1 (1951).

#### b. *Refusal to Relocate Store*

■ Eichman contends that Fotomat breached the franchise agreement when it failed to relocate his store upon his request. The district court held that the express terms of the lease and franchise agreements gave Eichman no right to have his store relocated. The franchise agreement provides in Section F–11.10:

OPERATOR does hereby acknowledge and agree that this Franchise Agreement and the operation of the FOTOMAT operation pursuant to this Agreement is pertinent to the Lease Agreement between OPERATOR and FOTOMAT; that said Lease provides that FOTOMAT shall have the right to relocate the FOTOMAT MERCHANDISING ISLAND and premises from time to time and that OPERA-TOR will relocate his franchise operation to the location of the merchandising island in accordance with the terms of the Lease.

The lease agreement provides in Section L–4:

RELOCATION OPTION

If deemed necessary, FOTOMAT may during the term of this Lease, *at its sole option and discretion,* move the FOTO-MAT MERCHANDISING ISLAND from the location set forth in Exhibit "A" to another location or locations within a radius of ten miles of the original location, for the benefit of OPERATOR'S business or to remedy conditions beyond the control of FOTOMAT; and, further in the event relocation is made necessary by any action of eminent domain, OPER-ATOR waives all right to or interest in any consideration, award or settlement. (emphasis added).

The plain language of the franchise and lease agreement provides that the right to relocate the store is left to Fotomat's discretion. The agreement does not authorize Eichman to relocate his franchise nor require Fotomat to approve such a request. Thus, the district court properly found that Fotomat was not in breach of the lease or franchise agreement when it refused to relocate Eichman's store.

#### c. *Overcharges for Film, Photoprocessing and Merchandise*

Eichman contends that Fotomat breached the franchise agreement when it failed to sell him film, film processing and merchandise "at Fotomat's cost without any

markup whatsoever." The district court granted summary judgment to Fotomat on Eichman's claim that Fotomat overcharged him for film, film processing, and merchandise. Although the district court did not give any reasons for this particular holding, Judge Rhoades' comments at a previous hearing indicate that with respect to film processing that court had concluded that Eichman failed to prove damages because he stopped having his film processed by Fotomat in 1976.

Eichman switched processors in 1976 because he was able to get less expensive processing elsewhere. The franchise agreement Section F-9.2 provides: "FOTOMAT does hereby agree that all film and film processing purchased by OPERATOR from FOTOMAT will be sold to OPERATOR at FOTOMAT'S cost without any markup whatsoever." The district court pointed out to Eichman's attorney that unless Eichman could show that the alternative processor he was using was more than the price being offered by Fotomat he had no damages. Eichman's attorney told the district court that he had all sorts of evidence to show that Eichman's processor was charging more than Fotomat's prices "without any markup whatsoever." However, Eichman's attorney stated that the evidence was not available to present to the district court at that time.

On appeal, the only evidence relied upon by Eichman is the statement in his declaration that he called Fotomat in May 1978 "to inquire about the possibility of my switching my photo processing back to Fotomat. However, the price that [Fotomat] quoted was greater than the price that I was supposed to pay under the terms of the franchise agreement." Eichman did not present evidence establishing what price Fotomat offered him or what price he was paying. Therefore, he has failed to establish any damages.

Moreover, the franchise agreement provides in Section F-8.6 that, "OPERATOR shall purchase all merchandise, photoprocessing services and other services from FOTOMAT or from such other sources as have been approved in writing by FOTO-MAT." Eichman exercised his option under the contract to use a different processor. Eichman argues that because Fotomat did not approve his processor in writing, he is still obligated to purchase photoprocessing from Fotomat and therefore, he can sue Fotomat for breach of the contract.

The record shows that on January 26, 1976, Eichman advised Fotomat he would be changing processors. Fotomat did not object. Fotomat merely asked Eichman to put the name of the new processor and the reasons for his change in a letter. Eichman complied on April 12, 1976. Thus, the record shows that Fotomat impliedly approved of his change. The fact that Fotomat did not put this approval in writing is immaterial. Under section F-11.13 of the franchise agreement and under general principles of contract law, Fotomat had the right to waive the condition that the approval be in writing. *See* Restatement (First) of Contract § 297, comment b (1932).

Eichman relies on sections 2202 and 2208 of the California Commercial Code to support his claim that he was required to purchase film processing from Fotomat despite the fact that he changed film processors. Eichman's reliance on the Uniform Commercial Code to interpret the contract with respect to film processing is misplaced. Film processing is a service. The sales section of the California Commercial Code applies to the sale of goods, not services. Cal.Com.Code § 2102 (West 1964). Therefore, the district court properly granted Fotomat summary judgment on the photoprocessing claim.

Eichman also contends that he was overcharged by Fotomat for film and merchandise. Although Eichman switched processors in 1976, he continued to purchase film and merchandise from Fotomat. Eichman relies on a letter Fotomat sent to the franchisees in 1980 to support this claim. The letter stated, "[a]s you are aware, FOTOMAT has ... recovered [its indirect costs] through a charge of approximately seven percent (7%) above actual invoice cost on FOTOMAT-brand merchandise resold to its franchisees." The letter stated

further that although Fotomat thought this was proper, it had decided to discontinue the practice. Eichman also relies on the testimony given in 1983 in the *King* case by Fotomat's vice president. Fotomat's vice president testified in *King* that he "thought" that this letter sent to the franchisees only operated prospectively and franchisees did not receive refunds.

In support of its motion for summary judgment, Fotomat submitted the declaration of Fotomat's Director of Corporate Accounting. In the Director's declaration she itemized Eichman's purchases of film and merchandise for the years 1977 through 1986 and stated that Fotomat credited Eichman's account for cash discounts and other discounts which were charged during those years. Eichman presented no evidence to rebut this evidence of refunds presented by Fotomat. The testimony of the vice president in *King* was not definitive on the issue of refunds. Moreover, the evidence presented by Fotomat specifically deals with Eichman's purchases and credits from Fotomat. The record indicates that the Director of Accounting was a percipient witness to the accounting transactions between Eichman and Fotomat. The testimony of Fotomat's vice president, who did not have first hand knowledge of the facts, appears to be a tentative conclusion. Accordingly, his testimony would be entitled to little probative value. *See* Fed.R.Evid. 602 (only witnesses with personal knowledge may testify). Eichman has failed to present evidence that would convince a reasonable trier of fact by a preponderance of the evidence that he did not receive a refund for Fotomat's purported overcharges. "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The district court did not err when it granted Fotomat summary judgment on this breach of contract claim.

### d. Inadequate Maintenance

 Eichman contends that Fotomat breached the franchise agreement by fail-

ing to provide his store with adequate maintenance. The district court held that Eichman presented no evidence that Fotomat inadequately maintained the premises or the extent of his damages, if any. Eichman did not provide the court with a citation to any contract provision. We assume that he is asserting a breach of Section F–9.5 of the franchise agreement which provides:

> FOTOMAT shall provide a maintenance service which shall include, but shall not be limited to, periodic watering and cleaning of the shrubbery area, periodic washing of the building, interior and exterior painting of the FOTOMAT MERCHANDISING ISLAND, preventive maintenance and repair services.

In his declaration, Eichman stated that from 1978 until 1984, some plants at the store died, the roof was not fastened to the building, and a chair and some cabinets were not repaired until approximately 1984. Eichman alleged that the roof was not fastened to the store since the early 1970's. That portion of the claim is barred by the statute of limitations and res judicata. The record shows that the chair and the cabinets were subsequently repaired. Accordingly, this portion of the claim was properly dismissed because Eichman has not shown any damages. Finally, with respect to the dead bushes, Eichman did not present any evidence of the monetary damages, if any, that resulted from the death of the shrubbery. The district court properly dismissed the inadequate maintenance claims.

### e. Notification of Promotions

 Eichman contends that Fotomat failed to give him notification of Fotomat store promotions. The district court held that Eichman failed to present evidence that he was not notified of the promotions he could participate in. The district court also noted that because Eichman had chosen to use a different third party processor, he could not participate in the promotions offered by Fotomat's third party processors.

Eichman has not cited to any portion of the franchise agreement or some other contract upon which he bases his claim. Our review of the franchise agreement indicates that the only provision dealing with promotions is Section F–4.3 which provides in relevant part that Eichman will pay a 3% royalty fee which "shall be expended by FOTOMAT for the purpose of advertising, public relations, and the promotion of the total franchise operation ..."

The only evidence Eichman submitted regarding Fotomat's alleged breach is the statement in his declaration that he was not notified of any promotions. This allegation is merely a restatement of the pleadings which is insufficient to survive a motion for summary judgment. *See McGlinchy*, 845 F.2d at 809 (declarations which merely restate the pleadings are insufficient to survive a motion for summary judgment because Federal Rule 56(e) does not allow a party to oppose summary judgment on the pleadings themselves). Eichman has also failed to present any evidence of any damages. In addition, the record shows that Eichman could not participate in many of the promotions because he had changed processors. The district court properly granted summary judgment to Fotomat on this claim.

### 5. Conversion

■ Eichman contends that Fotomat converted money belonging to him when it overcharged him for goods and services. The district court held that Eichman's breach of contract claims relating to the overcharge for film and film processing failed to state a claim so the conversion claim also failed to state a claim. The district court also found that Eichman failed to allege facts within the relevant limitations period to support this claim.

The evidence shows that Fotomat credited Eichman's account for the overcharges. Thus, Eichman has suffered no loss resulting from any overcharge. Accordingly, he has failed to demonstrate any damages resulting from the alleged conversion. Summary judgment was a proper disposition of this claim.

### 6. Intentional Interference with Prospective Business Advantage

Eichman based his claim for intentional interference with prospective business advantage on (1) Fotomat's placement of company stores in Eichman's market area; (2) Fotomat's failure to allow Eichman to participate in promotions, and (3) Fotomat's failure to notify Eichman of upcoming promotions.

The district court held that Eichman did not present any evidence that Eichman would have had greater sales absent Fotomat's alleged interference. The district court further found that the alleged acts of Fotomat occurred prior to the limitation cutoff or did not occur at all. With regard to promotions, the district court found that Eichman was given an opportunity to participate. With regard to Eichman's claim of market overlap, the district court found that Eichman presented no evidence that a Fotomat company store must be placed at least six miles from his store to avoid interference with his store. On this appeal Eichman only challenges the dismissal of this claim with regard to the claim of market overlap.

■ To establish a claim of interference with prospective business advantage Eichman was required to present evidence establishing: (1) a specific economic relationship between the plaintiff and some third person containing the probability of future economic benefit to Eichman; (2) knowledge by Fotomat of the existence of the relationship; (3) intentional acts on the part of Fotomat designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages proximately caused by Fotomat's acts. *Rickards v. Canine Eye Registration Foundation, Inc.*, 704 F.2d 1449, 1456 (9th Cir.) *cert. denied*, 464 U.S. 994, 104 S.Ct. 488, 78 L.Ed.2d 683 (1983); *Youst v. Longo*, 43 Cal.3d 64, 71, 729 P.2d 728, 233 Cal.Rptr. 294 (1987).

■ Eichman alleges that he lost regular and potential customers because Fotomat placed company stores in his market area. The relevant time period covering

this claim is the period after June 19, 1979. During this time period, only one Fotomat company store was opened. This Fotomat company store was located 2.5 miles from Eichman's store.

However, from 1974 until at least August 1980, Eichman operated sixteen ACE Corporation photo drive-thrus in San Bernardino and Riverside Counties. *Fotomat v. ACE Corp.*, 208 U.S.P.Q. 92, 95 (S.D.Cal. 1980). Starting in September 1975, Eichman's ACE stores used the same trade dress as the Fotomat stores. *Id.* Although the parties do not indicate when Eichman's Chino ACE store was opened, a map in the record indicates that this Chino ACE store was closer to Eichman's Fotomat store than the Fotomat Company store installed in 1980. There were also other photoprocessing retailers in the area during the relevant time period. The only evidence Eichman submitted that pertains to his store is a statement that eight months prior to Fotomat's opening of the company store in August 1980, his Fotomat store had sales of $148,390.00 and one year later his store had sales of only $135,530.00. From this evidence, Eichman argues that his loss of sales was caused by Fotomat's overlap of company stores. Eichman did not present any evidence that would support an inference that the decline in his sales was caused by Fotomat rather than other competition including Eichman's own ACE stores. Thus, Eichman failed to meet his burden of proof to establish tortious interference. *See Campbell v. Rayburn*, 129 Cal.App.2d 232, 235, 276 P.2d 671 (1954) (plaintiff must show that but for the tortious interference he would have made a profit).

### 7. Unfair Business Practices

Eichman's claim under California Business and Professions Code § 17200 *et seq.* alleged unfair competition by Fotomat. Eichman alleged that Fotomat overlapped company stores in Eichman's market area; used identical trade dress, trademark and trade name; refused to relocate his store; and overcharged Eichman for goods and services. The district court held that Fotomat had the exclusive right to use its own name and trade dress. The district court relied on the decision in a former case brought by Fotomat against Eichman's ACE Corporation photo stores for trademark infringement where the district court in that case decided this precise issue. *Fotomat Corp. v. ACE Corp.*, 208 U.S.P.Q. 92 (S.D.Cal.1980). The district court also held that as a matter of law Fotomat could not be found liable for unfair competition if customers were confused by the appearance of Fotomat's Company stores or some other franchisee's stores. On this appeal Eichman does not challenge the district court's ruling with regard to the trademark and trade dress. Instead, Eichman challenges the district court's dismissal of the whole claim because he asserts that the overlapping, overcharging, and refusal to relocate his store are actionable under the section 17200 et seq.

Section 17200 of the California Business and Professions Code provides as follows: "As used in this chapter, unfair competition shall mean and include unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." The California courts have interpreted the statute broadly. *Barquis v. Merchants Collection Ass'n.*, 7 Cal.3d 94, 111–12, 496 P.2d 817, 101 Cal. Rptr. 745 (1972). However, contrary to Eichman's contentions, summary judgment is proper if a plaintiff fails to establish a prima facie case or where the defendant can demonstrate that its business practice is justified. *Motors, Inc. v. Times Mirror Co.*, 102 Cal.App.3d 735, 740, 162 Cal.Rptr. 543 (1980).

Because Eichman has not demonstrated that Fotomat's conduct is unlawful, we assume that he contends that Fotomat's conduct is "unfair" within the meaning of the statute. Eichman cites no case supporting his claim that Fotomat's conduct is prohibited by section 17200 and we have not found one. Moreover, pursuant to the franchise agreement Eichman has no right to have his store relocated and has no right

to preclude Fotomat or any other competitors from competing with his Fotomat store. *See Plotkin v. Tanner's Vacuums,* 53 Cal.App.3d 454, 460, 125 Cal.Rptr. 697 (1975) (court suggests that cause of action might be stated if plaintiff could establish a breach of an agreement).

With respect to Eichman's overcharging claim, because Fotomat has reimbursed him, he has no damages. In addition, because he cannot demonstrate that Fotomat has threatened future overcharges, injunctive relief is not warranted. The district court properly dismissed Eichman's Unfair Business Practices claim.

### 8. Breach of the Implied Covenant of Good Faith & Fair Dealing

Eichman contends that Fotomat breached the covenant of good faith and fair dealing in the franchise agreement when it (1) denied that the franchise agreement contains a provision for an exclusive marketing area; (2) secretly overcharged Eichman for goods and services; (3) attempted to avoid liability under the franchise agreement by trying to force Eichman out of business; and (4) placed company stores in Eichman's marketing area. The district court recognized that an implied covenant of good faith and fair dealing exists in every contract. However, the district court held that Eichman's remedy was for breach of contract because Eichman's case was not the type of case that could be brought for breach of the implied covenant of good faith and fair dealing.

The California Supreme Court in *Seaman's Direct Buying Service, Inc. v. Standard Oil Co.,* 36 Cal.3d 752, 686 P.2d 1158, 206 Cal.Rptr. 354 (1984) discussed the breach of the covenant of good faith and fair dealing in the commercial context. The court stated: "[w]hile the proposition that the law implies a covenant of good faith and fair dealing in all contracts is well established, the proposition advanced by [the plaintiff]—that breach of the covenant always gives rise to an action in tort—is not so clear." *Id.* at 768, 206 Cal.Rptr. 354, 686 P.2d 1158. The court then discussed

the special relationship that exists between an insurer and an insured and stated:

When we move from such special relationships to consideration of the tort remedy in the context of the ordinary commercial contract, we move into largely uncharted and potentially dangerous waters. . . . . In [commercial contracts] it may be difficult to distinguish between breach of the covenant and breach of contract, and there is the risk that interjecting tort remedies will intrude upon the expectations of the parties. This is not to say that tort remedies have no place in such a commercial context, but that it is wise to proceed with caution in determining their scope and application.

*Id.* at 769, 206 Cal.Rptr. 354, 686 P.2d 1158. Thus, courts interpreting *Seaman's* have exercised caution in this area.

 Under California law a breach of the covenant of good faith and fair dealing will give rise to a tort action in limited circumstances where a special relationship exists between the parties. *Wallis v. Superior Court,* 160 Cal.App.3d 1109, 1118, 207 Cal.Rptr. 123 (1984). The characteristics of a special relationship are:

(1) the contract must be such that parties are in inherently unequal bargaining positions; (2) the motivation for entering the contract must be a non-profit motivation, i.e., to secure peace of mind, security, future protection; (3) ordinary contract damages are not adequate because (a) they do not require the party in the superior position to account for its actions, and (b) they do not make the inferior party "whole"; (4) one party is especially vulnerable because of the type of harm it may suffer and of necessity places trust in the other party to perform; and (5) the other party is aware of this vulnerability.

*Id.*

In *Little Oil Co., Inc. v. Atlantic Richfield Co.,* 852 F.2d 441, 446–47 (9th Cir. 1988), we held that a special relationship did not exist in the franchisor-franchisee relationship under the facts of the case. In *Little Oil Co.* we applied the factors set out in *Wallis* and found that although a

disparity in bargaining power between gasoline refiners and franchise distributors existed, the remaining factors in *Wallis* were not met. The motivation for entering into the contract was profit. The plaintiffs did not show that contract damages were inadequate or that they suffered from the particular vulnerability factors set out in factors four and five. 852 F.2d at 446–47. *See also, Premier Wine and Spirits, v. E. & J. Gallo Winery*, 644 F.Supp. 1431, 1436 (E.D.Cal.) (supplier-distributorship relationship is not a special relationship) *aff'd* 846 F.2d 537 (1986); *C. Pappas Co., Inc. v. E. & J. Gallo Winery*, 610 F.Supp. 662, 665–67 (E.D.Cal.1985) *aff'd without opinion*, 801 F.2d 399 (9th Cir.1986).

Similarly, here, although there may have been a disparity in bargaining power between Eichman and Fotomat, Eichman has not demonstrated that he has met the rest of the *Wallis* factors. In particular, he has not demonstrated why contract damages would be inadequate.

Finally, Eichman's reliance on the Seventh Circuit's decision in *Photovest v. Fotomat Corp.*, 606 F.2d at 728–29 to support his claim is misplaced. The Seventh Circuit's very broad interpretation of the duty of good faith and fair dealing under California law is foreclosed by the decision in *Seaman's*. The California Supreme Court's latest decision in *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 254 Cal. Rptr. 211, 765 P.2d 373 (1988), would also appear to foreclose Eichman's claim. We do not rely on *Foley*, however, because the California Supreme Court has not addressed the question of the retroactive application of its *Foley* decision. The district court properly granted Fotomat summary judgment on this claim.

## VI

### CONCLUSION

Our independent review of the record has revealed to us that summary judgment was appropriate as to each of Eichman's claims. Accordingly, the judgment is AFFIRMED.