5 F.3d 537
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 James S. MCINERNEY; Clara I. McInerney; Mario Perez,
Plaintiffs-Appellees,
v.
Suchai TANG; Connie Tang; Malee Tang; Gordon Tang; Eddie
Tang, Defendants-Appellants.
 No. 92-15388.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 12, 1993.*
Decided Aug. 18, 1993.
 
 Appeal from the United States District Court for the Northern District of California; No. CV-91-02813-JPV, John P. Vukasin, Jr., District Judge, Presiding.
 N.D.Cal.
 AFFIRMED.
 Before: KOZINSKI, THOMPSON and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 On June 7, 1990 defendants Suchai Tang, Malee Tang, Connie Tang, Gordon Tang and Eddie Tang (the "Tangs") filed a motion pursuant to Federal Rule of Civil Procedure 60(b)(6) in the United States Bankruptcy Court for the Northern District of California, seeking relief from the judgment entered on December 11, 1987 setting aside the trustee's sale of certain property to the Tangs. The bankruptcy court denied the motion on August 14, 1990.
 
 
 3
 The Tangs appealed that denial to the United States District Court for the Northern District of California. The district court issued its Memorandum of Decision on January 31, 1992 affirming the bankruptcy court's denial of the Tangs' Rule 60(b)(6) motion. The Tangs timely filed a notice of appeal on February 26, 1992. We have jurisdiction under 28 U.S.C. Sec. 158(d). We affirm.
 
 FACTS AND PROCEEDINGS
 
 4
 This case has been pending for over a decade. There have been two bankruptcy trials, three district court appeals, and two appeals before this court, including a petition for rehearing. For purposes of our disposition, it is unnecessary to repeat the extensive factual and procedural history of this case. Instead we set forth a summary of the facts and proceedings which provides the backdrop for our decision.
 
 
 5
 In 1981, James S. McInerney and Clara I. McInerney (the "McInerneys") acquired through a probate proceeding property located at 40 27th Avenue, San Francisco, California (the "Sea Cliff Property"). Financing was arranged with Stephen Goodman, John Major, House of Money and San Francisco House of Money (the "Goodman defendants"). The Goodman defendants agreed to lend the McInerneys $105,000 for 45 days at a rate of 23%, and payment of $15,000 in points to be paid from the loan proceeds. The loan was secured by deeds of trust on three properties: the Sea Cliff Property, the Pecks Lane Property and the Maddux Drive Property. As part of the agreement, the Goodman defendants agreed to provide replacement financing at the end of the 45-day period for one to three years at a rate of 18% to 20%.
 
 
 6
 At the end of the 45-day period, the Goodman defendants advised the McInerneys that they would not provide the agreed upon replacement financing. The Goodman defendants and the McInerneys subsequently entered into a second agreement on December 8, 1981 which provided that the Pecks Lane Property would be sold between December 30, 1981 and February 1, 1982, but that the Sea Cliff Property and the Maddux Drive Property would not be noticed for sale before February 1, 1982. The agreement also provided that the Goodman defendants were to notify T.D. Services, the trustee, of the terms of this agreement. In exchange, the McInerneys agreed to pay $60,000 prior to December 30, 1981 to reduce the amount of their indebtedness to the Goodman defendants. The McInerneys made the required payment; the Goodman defendants failed to uphold their end of the bargain.
 
 
 7
 On December 30, 1981, the trustee noticed the sale of the Sea Cliff Property for February 4, 1982. The McInerneys filed suit on January 29, 1982 in the San Francisco Superior Court seeking a temporary restraining order and a preliminary injunction. The trustee postponed the sales of the Pecks Lane Property and Sea Cliff Property to February 17 and 18, 1982, respectively. On February 17, 1982, the Pecks Lane Property was sold to the Goodman defendants in exchange for a full credit bid. On February 18, 1982, unbeknownst to the McInerneys, the Sea Cliff Property was sold to the Tangs for $62,500 and an assumption of the first deed of trust in the amount of $200,000.
 
 
 8
 Upon learning of the sale of the Sea Cliff Property to the Tangs, the McInerneys filed a supplemental complaint joining the Tangs as defendants. Then, in October 1982, the McInerneys filed a Chapter 11 petition in bankruptcy. The superior court action against the Tangs and the Goodman defendants was removed to the bankruptcy court.
 
 
 9
 Following a trial in February 1986, the bankruptcy court ordered the trustee's sale to the Tangs set aside. The Tangs appealed this decision to the district court. The district court ordered the matter remanded to the bankruptcy court for a determination whether the Tangs were bona fide purchasers.
 
 
 10
 During the retrial in June and July 1987, evidence was received, without objection by the Tangs, that the Pecks Lane Property had been sold in exchange for a full credit bid. This extinguished the debt of the McInerneys to the Goodman defendants.
 
 
 11
 Following the retrial, and over the Tangs' objections, the bankruptcy court adopted specific findings of fact that a full credit bid had taken place at the sale of the Pecks Lane Property, and concluded as a matter of law that the trustee could not sell the Sea Cliff Property to the Tangs, that the sale was invalid, and that the McInerneys were the owners of the Sea Cliff Property.
 
 
 12
 The Tangs again appealed to the district court asserting that the "only issue on appeal" was whether the price they paid was so grossly inadequate so as to put them on constructive notice of irregularities in the trustee's sale. In their opening brief, they also challenged the bankruptcy court's finding as to the full credit bid. Supplemental Excerpt of Record, Ex. G, p. 8 n. 2. The district court affirmed the judgment of the bankruptcy court.
 
 
 13
 The Tangs then appealed to this court. We held that the full credit bid constituted a "fatal" flaw in the sale which went to the "very substance of the trustee's right to conduct the sale." We specifically addressed the Tangs' contention that the bankruptcy court improperly decided the full credit bid issue, and held that contention had no merit. Recognizing that we could "affirm the trial court's ruling on any ground presented on the record [citation omitted]," we affirmed on the basis that the substantive flaw concerning the full credit bid, coupled with the gross disparity in the price, was "quite sufficient to require that the sale be set aside." The Tangs filed a petition for rehearing, and again argued that evidence of the full credit bid should not have been considered as a basis for the judgment setting aside the trustee's sale of the Sea Cliff Property. After due consideration, we denied the petition for rehearing on May 10, 1990.
 
 
 14
 On June 7, 1990, the Tangs filed a motion for relief from the judgment, relying on Federal Rule of Civil Procedure 60(b)(6). The bankruptcy court denied the motion. The Tangs appealed to the district court. In affirming, the district court explained that the Tangs' Rule 60(b)(6) motion had been properly denied for two reasons. The court first held that the motion was procedurally doomed because the Tangs had failed to object to the evidence of the full credit bid at the second bankruptcy trial, and this failure to object precluded a subsequent attack on that evidence under Rule 60(b). More importantly, the district court held that the doctrine of law of the case barred reconsideration of the issue in the Tangs' Rule 60(b) motion because it was previously decided on appeal to this court.
 
 
 15
 Despite the sound reasoning and precise explanation provided by the district court, the Tangs have appealed to this court. We affirm.
 
 DISCUSSION
 A. Standard of Review
 
 16
 The grant or denial of a motion brought pursuant to Federal Rule of Civil Procedure 60(b) is reviewed for an abuse of discretion. Cintron v. Union Pacific R. Co., 813 F.2d 917, 919 (9th Cir.1987).
 
 B. The Tangs' Arguments
 
 17
 The thrust of the Tangs' argument is that they have been denied their due process rights because they are now bound by a judgment based on the full credit bid issue without having had the opportunity to fully and fairly litigate the issue. We reject this argument.
 
 
 18
 1. The Tangs have not demonstrated "extraordinary circumstances" to support a Rule 60(b)(6) motion.
 
 
 19
 The Tangs argue that the finding of the bankruptcy court on the full credit bid issue was clearly erroneous because that finding, and resulting judgment, were based on an issue outside the scope of the remand order. This argument fails because the Tangs' failure to object to the introduction of the evidence regarding the full credit bid at the second bankruptcy trial precluded them from raising the issue in a Rule 60(b)(6) motion. As stated in Blinder, Robinson & Co. v. SEC, 748 F.2d 1415 (10th Cir.1984), cert. denied, 471 U.S. 1125 (1985):
 
 
 20
 A Rule 60(b) motion is an extraordinary procedure which may be granted in [sic] a showing of due cause. [citation omitted].
 
 
 21
 Even assuming that Blinder, Robinson's attorney's failure to object to the allegedly improper evidence was due solely to the negligence of their counsel rather than to deliberate litigation strategy, this would not constitute a sufficient showing to warrant the extraordinary relief sought.
 
 
 22
 Id. at 1420; see also In re Braen, 900 F.2d 621, 629 (3d Cir.1990), cert. denied, 498 U.S. 1066 (1991), stating "[c]ases abound in which petitions for relief from judgment under Rule 60(b) on this ground have been denied. [citations omitted]."
 
 
 23
 2. The doctrine of law of the case bars reconsideration of the Tangs' challenge to the full credit bid evidence.
 
 
 24
 Under the doctrine of law of the case, "a decision of the court in a prior appeal must be followed in all subsequent proceedings in the same case." Eichman v. Fotomat Corp., 880 F.2d 149, 157 (9th Cir.1989), citing Waggoner v. Dallaire, 767 F.2d 589, 593 (9th Cir.1985), cert. denied, 475 U.S. 1064 (1986). Once the court of appeals has affirmed a judgment, the district court may subsequently modify that judgment pursuant to a Rule 60(b) motion[1] in three situations: " the first decision is clearly erroneous and would result in manifest injustice, an intervening change in the law has occurred, or the evidence on remand is substantially different." Id.
 
 
 25
 The Tangs assert that the bankruptcy court's use of the full credit bid evidence and resulting judgment were clearly erroneous and manifestly unjust. The bankruptcy court expressly stated its view to the contrary at the hearing on the Tangs' Rule 60(b) motion: "[T]he matter has been presented to the United States Court of Appeals, which included a request for rehearing.... The Court of Appeals has ruled in favor of the McInerney position. I am satisfied that the result that has been obtained is a fair and just result." Excerpt of Record, Ex. 6, p. A-47.
 
 
 26
 The Tangs also assert that the evidence presented to the court in support of their Rule 60(b)(6) motion differed substantially from the record of their earlier appeal. To the contrary, it was identical to the evidence on which the Tangs' relied to challenge the evidence of the full credit bid in their prior appeal and petition for rehearing. Because we rejected that challenge by denying the petition for rehearing, the bankruptcy court had no power to reconsider the issue. Gould v. Mutual Life Ins. Co. of New York, 790 F.2d 769 (9th Cir.1986).
 
 C. Conclusion
 
 27
 We previously ruled that the trustee's sale of the Sea Cliff Property to the Tangs must be set aside based on the grossly inadequate price and the substantive irregularity in the trustee's sale resulting from the full credit bid on the Pecks Lane Property. That ruling is the law of the case. When presented with the identical issue in a Rule 60(b)(6) motion by the Tangs, the bankruptcy court recognized that it had no power to revisit the issue, and denied the motion. The district court properly affirmed that ruling, and provided a clear and concise explanation of its reasons for doing so.
 
 
 28
 This appeal is close to frivolous and the Tangs have narrowly escaped the imposition of sanctions. This litigation is now at an end; if the Tangs file anything further in this or any other court they may be forced to pay the other side's attorney's fees and double costs, and their attorney of record may be disciplined.
 
 
 29
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for disposition without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The McInerneys argue that the Tangs' motion was not truly a Rule 60(b)(6) "extraordinary circumstances" motion, but rather a Rule 60(b)(1) motion based on "mistake, inadvertence, surprise or excusable neglect," which would be time-barred. Because in any case the Tangs cannot show extraordinary circumstances, we do not reach this contention