[Civ. No. 45872. Second Dist., Div. Five. Dec. 3, 1975.]

JAMES R. PLOTKIN et al., Plaintiffs and Appellants, v.
TANNER'S VACUUMS et al., Defendants and Respondents.

**COUNSEL**

Mike Mayo for Plaintiffs and Appellants.

Hahn & Hahn and Don Mike Anthony for Defendants and Respondents.

## OPINION

HASTINGS, J.—This is an appeal from an order (judgment)· of dismissal entered after a demurrer to a second amended complaint was sustained without leave to amend.

### STATEMENT OF FACTS

In 1966 James R. Plotkin, individually, and Pasadena Vacuum and Sewing Center, a California corporation, plaintiffs and appellants (appellants) began to buy parts to service Royal vacuums directly from the Royal Appliance Manufacturing Company (Royal), defendant and respondent.

In March 1971 appellants began to purchase Royal vacuum cleaners directly from the factory of Royal and enjoyed full credit privileges. Also in that year, appellants began using Royal's logo in telephone book advertisements. In June 1972 appellants were apparently given status as a factory warranty and service station, and were listed as such in a service brochure of Royal.[1]

Tanner's Sew-Vac and Northeast Distributors are fictitious firm names used by respondent Martin T. Tanner (Tanner). Tanner serves the same geographical area as appellants and in June of 1973, Royal named Tanner the exclusive distributor for this area. Appellants were informed that all orders for products or parts were to be placed with Tanner, and the prices for all of the products or parts could be raised within the sole discretion of Tanner at any time. In April 1974, appellants received a new listing of Royal's authorized service stations and their name and address had been deleted.

### ISSUE PRESENTED

Does appellants' second amended complaint state facts sufficient to state a cause of action for unfair competition?

### ARGUMENT

■ Appellants claim they have stated a cause of action for "unfair competition" as defined in the California Unfair Practices Act (UPA) set

---

[1]How appellants received this status and the other rights listed is not divulged by the complaint or the record. We assume they were gratuitously granted by Royal as appellants do not allege any contractual rights.

forth in California Business and Professions Code section 17000 et seq.[2] and California Civil Code section 3369.[3] In general they argue that the provisions of the sections are so broad that they include almost any form of unfair competition, and what constitutes an unfair or fraudulent business practice under any given set of circumstances is a question of fact to be determined at trial and not by a ruling on a demurrer. They rely primarily on two cases, *Paramount Gen. Hosp. Co.* v. *National Medical Enterprises, Inc.,* 42 Cal.App.3d 496 [117 Cal.Rptr. 42], and *People* ex rel. *Mosk* v. *National Research Co. of Cal.,* 201 Cal.App.2d 765 [20 Cal.Rptr. 516]. While these cases do emphasize that the statutes codifying the Unfair Practices Act are to be liberally construed, recognizing that "unfair or fraudulent business practices may run the gamut of human ingenuity and chicanery," (*People* ex rel. *Mosk* v. *National Research Co. of Cal., supra,* at p. 772) the general principles set forth therein do not aid appellants. The only issue here is whether it is unfair competition for a manufacturer to create a distributorship and require retail purchasers to purchase from distributors rather than directly from the manufacturer.[4] The cited cases do not determine this issue.

It is the various consequences flowing from appellants' removal as distributors and the designation of Tanner as the exclusive distributor in the area that appellants object to. Their primary objections are that they have been forced to buy all parts and products from their main competitor Tanner at a higher price. Also that they must pay cash while Tanner enjoys credit privileges with Royal and that they cannot use the "Royal" trademark or operate as an "authorized service station" although Tanner is allowed to do so.

These alleged consequences do not amount to unfair competition under the sections cited by appellants. The UPA generally breaks down

[2]Business and Professions Code, section 17001 provides in pertinent part: ". . . the purpose of this chapter is to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition, by prohibiting unfair, dishonest, deceptive, destructive, fraudulent and discriminatory practices by which fair and honest competition is destroyed or prevented." The remaining provisions contain definitions and offenses against the chapter.

[3]Civil Code section 3369 provides in part as follows: "3. As used in this section, unfair competition shall mean and include unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising and any act denounced by Business and Professions Code Sections 17500 to 17535, inclusive."

[4]Appellants did not plead a contract with Royal that was cancelled or breached, or that they had acquired a vested interest that was divested by Royal when it required them to purchase from a distributor rather than from Royal. Nor did they attempt to state a cause of action alleging a combination in restraint of trade under the Cartwright Act (Bus. & Prof. Code, § 16700 et seq.).

into two main parts: prohibitions against "below cost selling" (Bus. & Prof. Code, § 17043) and against "locality discriminations" (Bus. & Prof. Code, §§ 17031, 17040).[5] The acts prohibited by these sections are designed to encourage competition and to safeguard the public against monopolies. (Bus. & Prof. Code, § 17001, *supra.*) As applied to our present case, the purpose of the act is to prevent Royal from obtaining an unfair advantage over competing manufacturers of the same product. *Harris* v. *Capitol Records etc. Corp.,* 64 Cal.2d 454 [50 Cal.Rptr. 539, 413 P.2d 139], elucidates.[6] On pages 461-462 it states: "Throughout the Act the Legislature has manifested its intent to discourage practices which injure the seller's competitors (§§ 17040, 17043, 17045, 17071) and thereby tend to create the monopolies condemned by section 17001 . . . . Equally apparent is the Legislature's concern to allow the seller to meet in good faith the prices of his competitors (§§ 17040, 17050), thereby fostering the competition promoted by section 17001. Together these constitute the 'horizontal' concept of price regulation, one of the fundamental characteristics of this legislation. In his exhaustive study entitled *Experience in California With Fair Trade Legislation Restricting Price Cutting* (1936) 24 Cal.L.Rev. 640, 686, Professor Ewald T. Grether explained: 'Whereas the Fair Trade Law [7] has to do with *vertical* price relations, the Unfair Practices Act operates *horizontally.*' (Italics in original.) And in Cupp, *The Unfair Practices Act* (1936) *supra,* 10 So.Cal.L.Rev. 18, the author said that 'The act may be said to be the consummation of years of effort by businessmen to carry out the horizontal concept of trade regulation.' More recently, it has been pointed out that under *Millage* the Unfair Practices Act 'protects only first-line competition against predatory price cutting on an area basis and does not make illegal price discriminations which only injure second or third-line competition at the buyer level or lower. . . . [A] seller can lawfully discriminate in favor of one of his purchasers for the purpose of enabling that purchaser to meet his competition, so long as there is no

[5]McCarthy, *Whatever Happened to the Small Businessman? The California Unfair Practices Act* (1968) 2 U.S.F.L.Rev. 165.

[6]In *Harris,* plaintiff owned and operated a retail phonograph record store and purchased its inventory from defendants Capitol Records, Columbia, and RCA at a standard dealer discount. Codefendant Dale was classified as a "rack-jobber" which qualified him for a greater discount in view of certain costs that he incurred in setting up racks in various retail outlets to sell records. At a point in time, codefendant Dale opened a retail store across the street from plaintiff and began selling at 50 percent off list price. Plaintiff sued Dale and the record manufacturers alleging that by allowing Dale the rack-jobber discount, and plaintiff only a regular dealer discount, Dale was able to undersell plaintiff and damage plaintiff's business. A summary judgment for the record manufacturers was granted.

[7]The UPA is completely separate from the Fair Trade Law. Appellants do not rely on any provision of the FTL.

*intent on the part of the seller to prevent or destroy the competition of other sellers at his level.'* (Bermingham, *Legal Aspects of Petroleum Marketing Under Federal and California Law* (1960) 7 U.C.L.A. L. Rev. 161, 246-247.)" (Italics added.) *Harris* further stated at page 463: "[A] pricing structure in which a distributor sells to a retailer at one discount and to a rack-jobber at another is expressly permitted by section 17042."[8]

In *U.S.* v. *Arnold, Schwinn & Co.,* 388 U.S. 365 [18 L.Ed.2d 1249, 87 S.Ct. 1856], the distributorship concept was recognized in an anti-trust case where the court on page 376 [18 L.Ed.2d page 1258] said: ". . . if nothing more is involved than vertical 'confinement' of the manufacturer's own sales of the merchandise to selected dealers, and if competitive products are readily available to others, the restriction, on these facts alone, would not violate the Sherman Act."

On analysis appellants' complaint is only based upon the fact that Royal has classified Tanner as its sole distributor in appellants' geographical area. Royal's action was simply vertical "confinement" of sales of its own merchandise and is not precluded by the UPA.

■ Appellants' alternate argument that they have stated a cause of action under Civil Code section 3369 also lacks merit. As pertinent here the section provides in subdivision 3: ". . . unfair competition shall mean and include unlawful, unfair or fraudulent business practice . . . ." Historically, the law of unfair competition was primarily concerned with the use of unfair means to draw customers away from competition. (7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, pp. 5302-5303.) Then the language of section 3369 "extended to the entire consuming public the protection once afforded only to business competitors." (*Barquis* v. *Merchants Collection Assn.,* 7 Cal.3d 94, 109 [101 Cal.Rptr. 745, 496 P.2d 817].) Numerous California decisions say that the essential test of unfair competition is whether or not the challenged activity is likely to deceive the public. (See e.g.: *Payne* v. *United California Bank,* 23 Cal.App.3d 850, 856 [100 Cal.Rptr. 672]; *People* ex rel. *Mosk* v. *National Research Co. of Cal., supra,* 201 Cal.App.2d 765, 771-773; *Audio Fidelity, Inc.* v. *High Fidelity Recordings, Inc.,* 283 F.2d 551, 557.)

---

[8]Business and Professions Code, section 17042, provides in part that: "Nothing in this chapter prohibits . . . (b) A functional classification by any person of any customer as broker, jobber, wholesaler or retailer. (c) A differential in price for any article or product as between any customer in different functional classifications."

Appellants are not competitors of Royal, so they have not stated a cause of action under the historical concept of the statute. They are also without a cause of action under the extended meaning of the section. We repeat that appellants complain only of the consequences flowing *to them* by reason of Royal's action. There are no allegations that the consumer has been damaged or that Tanner's distributorship is outside the scope of Business and Professions Code section 17042 or Royal's right to vertical "confinement" in the selling of its product. Appellants do not allege breach of any agreement by Royal. If, as they contend, they have stated a cause of action, the logical conclusion is that any retailer in the same business could simply demand distributorship discounts and allied benefits by pleading the general provisions of the cited sections. For the reasons stated, this is not legally correct and appellants have not alleged a theory that will sustain a cause of action.

The order (judgment) of dismissal is affirmed.

Kaus, P. J., and Stephens, J., concurred.