**FAMILY HOME & FINANCE CENTER, INC., et al.**

v.

**FEDERAL HOME LOAN MORTGAGE CORP., et al.**

No. CV 05 8752 PA (MANX).

United States District Court, C.D. California.

Oct. 2, 2006.

Joshua A. Waldman, Julian B. Bellenghi, Michael Joseph Collins, Collins and Bellenghi, Newport Beach, CA, for Family Home & Finance Center, Inc., et al.

Alonzo B. Wickers, IV, Kelli L. Sager, Robyn Aronson, Davis Wright and Tremaine, Los Angeles, CA, Jeffrey Q. Smith, King and Spalding, New York City, Kimberly A. Jackson, McLean, VA, Michael Ciatti, King & Spalding, Graciela Rodriguez, Washington, DC, for Federal Home Loan Mortgage Corp., et al.

ANDERSON, District Judge.

**Proceedings:** HEARING ON MOTION FOR SUMMARY JUDGMENT—COURT ORDER

Before the Court is a Motion for Summary Judgment filed under seal by defendant Federal Home Loan Mortgage Corp. ("Freddie Mac") (Docket No. 88). A redacted version of the motion was filed on August 31 (Docket No. 123).

## I. FACTUAL & PROCEDURAL BACKGROUND [1]

Plaintiffs Family Home & Finance Center, Inc., Daisy J. Phillips, and Mark Gallagher (collectively, "Plaintiffs") operate a mortgage brokerage business. They help borrowers obtain and refinance mortgages by soliciting mortgage applications from the borrowers and submitting the applications to lending institutions. The lenders then process the applications and fund the

---

1. The facts stated here are undisputed, except where noted.

loans through the process of loan origination.[2]

Until early 2005, a significant portion of Plaintiffs' business involved the solicitation of mortgage applications that were submitted to National City Mortgage Co. ("National City"). As part of this business, Plaintiffs encouraged borrowers to apply for loans with higher interest rates. Because these loans were attractive to National City, the lender paid Plaintiffs a Yield Spread Premium ("YSP"). Plaintiffs, in turn, paid a portion of the YSP as a rebate to the borrowers. This rebate helped offset the increased cost to borrowers of assuming mortgages with higher interest rates. Plaintiffs actively promoted this strategy by encouraging borrowers to repeatedly refinance their mortgages shortly after they were funded.[3]

Freddie Mac also participates in the mortgage industry in what is referred to as the secondary mortgage market. It purchases mortgages from lenders and either holds them in its own investment portfolio or combines them into mortgage pools. It sells interests (called "Participation Certificates") in the pools to other investors. When Freddie Mac sells Participation Certificates for a particular pool, it first evaluates the pool to determine what percentage of the loans will be prepaid through refinancing. This prepayment rate is used to calculate the purchase price, as it helps predict the return investors can expect from the pool.

In late 2004, investors in Participation Certificates began complaining of significant losses in mortgage pools that were prepaying at rates higher than expected. Freddie Mac initiated an investigation and determined that the pools contained a significant percentage of National City loans. Freddie Mac contacted National City and both began investigating Plaintiffs' role in the issue.

Following its investigation, National City terminated its business relationship with Plaintiffs. Freddie Mac independently concluded that Plaintiffs had been involved in the origination of "non-investment quality" loans. Freddie Mac found that the loans were subject to prearranged refinancing agreements between Plaintiffs and the borrowers and that Plaintiffs were offering financial incentives to encourage quick refinancing. Freddie Mac notified Plaintiffs that it intended to place them on its Exclusionary List and Plaintiffs appealed.[4] On January 30, 2006, Freddie Mac denied the appeal and Plaintiffs were placed on the list effective January 31.

Plaintiffs then filed an application for a temporary restraining order to have Freddie Mac remove them from the list. The Court denied the application on February 24. Plaintiffs have claims for intentional interference with contractual relations, unfair competition (pursuant to Cal. Bus. &

**2.** Though the parties dispute whether Plaintiffs "originate" mortgage loans, for simplicity and clarity the Court will use the term "origination" here to refer only to the process of evaluating a mortgage application and funding a loan. It is undisputed that Plaintiffs do not engage in these activities, but also that they do assist the process of loan origination by soliciting and submitting mortgage loan applications to lenders.

**3.** Though Plaintiffs assert that this repeated refinancing was facilitated by National City's

policies, it is undisputed that Plaintiffs actively promoted their repeated refinancing strategy to their borrowers.

**4.** The list consists of individuals and entities who are prohibited from participating directly or indirectly in transactions with Freddie Mac. Placement on the Exclusionary List, therefore, means that entities on the list cannot be involved in any way with loans that are eventually sold to Freddie Mac.

Prof.Code § 17200), and defamation. Freddie Mac has moved for summary judgment on all three claims.

## II. PLAINTIFF'S RULE 56(f) REQUEST

 Plaintiffs request denial of the motion for summary judgment pursuant to Rule 56(f). Under Fed.R.Civ.P. 56(f), the court may deny or order a continuance on a motion for summary judgment if the nonmoving party submits affidavits showing that "the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition." The party seeking a continuance has the burden of showing (1) that there are specific facts that it hopes to elicit from further discovery; (2) that those facts actually exist; and (3) that they are "essential" to resist the summary judgment motion. *California ex rel. California Dep't of Toxic Substances Control v. Campbell,* 138 F.3d 772, 779 (9th Cir.1998); *see also Terrell v. Brewer,* 935 F.2d 1015, 1018 (9th Cir.1991). The party seeking relief "cannot complain if it [has failed] diligently to pursue discovery before summary judgment." *Mackey v. Pioneer Nat'l Bank,* 867 F.2d 520, 523–24 (9th Cir.1989).

 In support of their Rule 56(f) request, Plaintiffs assert that Freddie Mac withheld certain documents until after key witnesses were deposed and have refused to produce those witnesses for additional examination. They also assert that Freddie Mac has not responded to discovery requests regarding (1) the criteria it uses to place individuals on the Exclusionary List, and (2) other persons or entities who have been placed on the list. These assertions are insufficient to meet the requirements of Rule 56(f), however, because they do nothing more than establish that the sought-after discovery is generically relevant to issues raised in this litigation. Plaintiffs fail to articulate any specific facts they hope to elicit, let alone establish that those facts actually exist or how they are essential to a successful opposition to the issues raised in the motion for summary judgment. Accordingly, Plaintiffs' Rule 56(f) request is denied.[5]

## III. STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d

---

**5.** Even if Plaintiffs had satisfied the requirements of 56(f), however, they are not entitled to additional discovery, since the discovery cut-off was September 4, 2006, and they failed to file either a timely motion for an extension of the deadline or a timely motion to compel discovery. (*See* Minute Order, May 21, 2004; Scheduling Order, May 23, 2004.) Plaintiffs asserted at oral argument that they had insufficient time to complete discovery under the Court's pretrial schedule. They also represented to the Court that they had filed a motion requesting relief from that schedule. Actually, however, they filed an *ex* *parte* application, not a noticed motion, and the only obstacle to completing discovery that they mentioned then was their inability to depose certain National City employees by September 4. (*See* Mem. P. & A. Supp. *Ex Parte* Application Modify Sched. Order 5–6.) If the Court's pretrial schedule precluded Plaintiffs from obtaining additional necessary discovery, their remedy was to file a motion for relief from the Scheduling Order. They did not do so and now cannot be heard to complain about the unfairness of the Court-imposed deadlines.

202 (1986). "[T]he burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *see also Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir.1990). The moving party must affirmatively show the absence of such evidence in the record, either by deposition testimony, the inadequacy of documentary evidence, or by any other form of admissible evidence. *See Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The moving party has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. *See id.* at 325, 106 S.Ct. at 2554.

The nonmoving party's allegation that factual disputes persist between the parties will not automatically defeat an otherwise properly supported motion for summary judgment. *See* Fed.R.Civ.P. 56(e) (nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial"). A "mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Fazio v. City & County of San Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting *Anderson*, 477 U.S. at 249, 252, 106 S.Ct. at 2510, 2512). If the adverse party does not so respond, summary judgment shall be entered.

## IV. ANALYSIS

For the reasons set forth below, the Court finds that Freddie Mac is entitled to a judgment as a matter of law on Plaintiffs' claims for intentional interference with contractual relations, unfair competition, and defamation.

## A. Intentional Interference with Contractual Relations

Plaintiffs contend that Freddie Mac intentionally interfered with their business relationship with National City. National City purchased loans from Plaintiffs pursuant to a Mortgage Loan Purchase Agreement ("MLPA"). Plaintiffs claim that Freddie Mac instructed National City to terminate this relationship.[6]

■ In order to establish their claim for intentional interference with contractual relations, Plaintiffs must establish (1) a valid contract between themselves and National City; (2) Freddie Mac's knowledge of the contract; (3) Freddie Mac's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. *Pac. Gas & Elec. Co. v. Bear Stearns Co.*, 50 Cal.3d 1118, 1126, 270 Cal. Rptr. 1, 4, 791 P.2d 587 (1990). Even if Plaintiffs can establish breach or disruption of a contract, they must also prove that Freddie Mac caused that disruption. *Franklin v. Dynamic Details, Inc.*, 116 Cal.App.4th 375, 391, 10 Cal.Rptr.3d 429, 441 (Ct.App.2004). It is also "essential" for Plaintiffs to show that Freddie Mac intended to induce the breach; if its "'actions were not intended to induce a breach, [it] cannot be held liable.'" *Kasparian v. County Los Angeles*, 38 Cal.App.4th 242, 261, 45 Cal.Rptr.2d 90, 100 (Ct.App.1995)

---

**6.** Though Plaintiffs' First Amended Complaint also asserts that Freddie Mac caused National City to terminate its relationship with them by placing them on the Exclusionary List, it is undisputed that National City took its action well before Plaintiffs were placed on the list.

(quoting *Imperial Ice Co. v. Rossier,* 18 Cal.2d 33, 37, 112 P.2d 631 (1941)).

Plaintiffs have failed to present any evidence that Freddie Mac caused National City to terminate the relationship, let alone that it intended for that result to occur. Plaintiffs' evidence does suggest that Freddie Mac could or should have known about their repetitive refinancing strategy years before investors started complaining about the unexpectedly high prepayment rates for some of its mortgage pools. Thus, they argue that it was Freddie Mac's own negligence that caused investor losses and, consequently, that Freddie Mac "sought a scape goat, in the persons of plaintiffs," to blame for the losses. Unfortunately for Plaintiffs, however, they cite no evidence either supporting this theory or connecting it to any action taken by National City.

The alleged support for Plaintiffs' theory comes from plaintiff Mark Gallagher's own declaration, in which he states that Freddie Mac "decided that it had to make a preemptive strike to ward off class action type litigation and sought out National City to develop a remedy that would put the Wall Street investors at ease, uphold the integrity of National City's product in the marketplace, and cast fault at someone that was expendable and not essential to the business strategies of Freddie Mac and National City. The entities that were to be thrown under the bus were the Plaintiffs." (Gallagher Decl. ¶ 10; *see also id.* ¶¶ 11–12.) These unsupported conclusions are clearly outside the scope of Mr. Gallagher's personal knowledge. Plaintiffs have produced no other admissible evidence sufficient to support these conclusions. *See* Fed.R.Civ.P. 56(e); Fed. R.Evid. 602; *United States v. Kupau,* 781 F.2d 740, 745 (9th Cir.1986).

More importantly, Plaintiffs can point to no evidence that Freddie Mac influenced National City's decision to terminate its relationship with Plaintiffs. Plaintiffs can point only to a hearsay statement attributed to a National City executive, Mr. Robert Shrader. According to Mr. Gallagher, Mr. Shrader told him that if Plaintiffs "didn't cooperate with Freddie Mac and National City, that they, and he meant it in the context that Freddie Mac and us, are going to come after you and shut you down." (Ciatti Decl. Ex. 3, 275:20–23.) Plaintiffs have failed to establish that this is admissible to show that Freddie Mac intended to interfere with their relationship with National City. They assert that it is either not hearsay because it is being offered to prove intent and not the truth of the matter it asserts, or that it is admissible under the state of mind exception to the hearsay rule. The problem with this argument is that the statement was made by a National City employee, not a Freddie Mac employee. Accordingly, it must be used to prove the truth of the matter it asserts if it is to prove anything at all about Freddie Mac. Similarly, it does not satisfy the state of mind exception to the hearsay rule because that exception "does not authorize receipt of a statement by one person as proof of another's state of mind." *Hong v. Children's Mem'l Hosp.,* 993 F.2d 1257, 1265 (7th Cir.1993); *see also* Fed.R.Evid. 803(3); *Phoenix Mut. Life Ins. Co. v. Adams,* 30 F.3d 554, 567 (4th Cir.1994); *United States v. Cintolo,* 818 F.2d 980, 1001 (1st Cir.1987); *Calhoun v. Baylor,* 646 F.2d 1158, 1162 (6th Cir. 1981).

Moreover, even if the statement were admissible, at best it implies that National City was willing to collude with Freddie Mac to harm Plaintiffs. It simply fails, however, to establish that Freddie Mac knew about that fact or intended to exploit it. Similarly, Plaintiffs' evidence that Freddie Mac knew their identity and was

investigating them before National City ended its relationship with them does not establish a genuine issue of material fact as to whether Freddie Mac either caused National City to terminate its relationship with Plaintiffs or intended to bring about that result. Accordingly, Freddie Mac is entitled to summary judgment on Plaintiffs' intentional interference with contractual relations claim.

## B. Unfair Competition

Plaintiffs claim that it was an unfair business practice under Cal. Bus. & Prof. Code § 17200 for Freddie Mac to place them on the Exclusionary List. They assert that their inclusion on the list was defamatory and intended by Freddie Mac to deter lending institutions from doing business with them.

 In order to determine whether a business practice is "unfair" for purposes of a § 17200 claim, the Court must examine the " 'practice's impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim.... An unfair business practice occurs when the practice offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.' " *People v. Duz–Mor Diagnostic Lab., Inc.*, 68 Cal.App.4th 654, 662, 80 Cal.Rptr.2d 419, 425 (Ct.App.1999) (alteration in original) (quoting *Podolsky v. First Healthcare Corp.*, 50 Cal.App.4th 632, 647, 58 Cal.Rptr.2d 89, 98 (Ct.App.1996)); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 319 F.Supp.2d 1059, 1075 (C.D.Cal. 2003). The question of whether a business practice is unfair is a question of law, and may be resolved on a motion for summary judgment. *Duz–Mor*, 68 Cal.App.4th at

660, 80 Cal.Rptr.2d at 424; *Motors, Inc. v. Times–Mirror Co.*, 102 Cal.App.3d 735, 740, 162 Cal.Rptr. 543, 546 (Ct.App.1980).

 Freddie Mac asserts that it had a legitimate business reason for placing Plaintiffs on the Exclusionary List because its investors incurred significant losses when it purchased loans originated with Plaintiffs' assistance. It argues that the list is the only feasible way of ensuring that similar loans are not purchased in the future. Though Plaintiffs assert that there are several genuine issues of material fact for trial on these claims, the Court does not find Plaintiffs' evidence sufficient to defeat Freddie Mac motion for summary judgment.

To begin, it is undisputed that Plaintiffs were associated with the origination of loans that were ultimately included in Freddie Mac's mortgage pools. It is also undisputed that Plaintiffs' repetitive refinancing strategy was not only a cause of the high prepayment rates for those pools, but that this caused significant problems for Freddie Mac, including that its investors experienced significant losses, Freddie Mac paid out approximately $2.6 million to investors as a result of those losses, it experienced losses on its own investments in the mortgage pools, and at least one institution notified Freddie Mac that it would not trade its Participation Certificates until the issue was resolved.

In an attempt to dispute these facts, Plaintiffs assert that other actors—namely National City and Freddie Mac itself—are to blame for Freddie Mac's losses. They insist that their repetitive refinancing strategy was facilitated by National City's policy of allowing refinancing within a short period time after funding, that Freddie Mac should have known about the prepayment risk of Plaintiffs' loans because the rebates they gave to borrowers were disclosed on loan documents, and that

Freddie Mac was negligent in including Plaintiffs' loans in mortgage pools that were not designed to properly spread the prepayment risk. All of these arguments are irrelevant however, where the facts remain that Plaintiffs' loans are inappropriate for inclusion in Freddie Mac's mortgage pools and the Exclusionary List is a means of ensuring that it does not inadvertently purchase such loans in the future. This is true regardless of whether other actors also played a role in causing the harm at issue.

Plaintiffs also contend that Freddie Mac unreasonably placed them on the list even though their repetitive refinancing strategy was legal and nonfraudulent. They maintain that the Exclusionary List is understood in the mortgage industry as a "fraud list" that identifies perpetrators of mortgage fraud and that they were improperly put on the list because Freddie Mac found that they had not committed fraud. Regardless of whether the list might be reasonably understood to be a fraud list for purposes of Plaintiffs' separate cause of action for defamation, however, they have provided no evidence that Freddie Mac placed them on the list in contravention of the purpose of the list or the guidelines governing it.

As described in the Exclusionary Policy governing the list, its purpose is to ensure that Freddie Mac does business "only with responsible persons and institutions in order to protect the integrity of its mortgage purchase and servicing functions." (Ciatti Decl. Ex. 53, at Ex. B, FRE000010815.) The Policy enables Freddie Mac to "exclude from any transactions with the corporation persons and organizations who have shown that they lack the integrity or

business capability reasonably expected from those with whom Freddie Mac does business." (*Id.*) In the enumerated "Bases for Exclusion," the Policy establishes that "grounds for exclusion include, but are not limited to ... [a]ny ... cause that in Freddie Mac's judgment may seriously and adversely affect Freddie Mac's programs or business interests." (*Id.* at FRE000010815–16.)

Following a thorough investigation of Plaintiffs' repeated refinancing strategy, Freddie Mac determined that it had resulted in loans that were of "non-investment quality because at the time they were originated, the originator and the borrower had entered into (or had agreed to enter into) an agreement to refinance these loans. In fact, at the time that these loans were originated, the borrowers were offered various financial incentives designed to result in unusually quick refinances of these loans." [7] (Ciatti Decl. Ex. 35.) Freddie Mac informed Plaintiffs of these findings, gave them numerous opportunities to respond, and ultimately determined that it had concerns "about the integrity of future loans in which your clients may have a role and the investment risk that may pose to the corporation." (Ciatti Decl. Ex. 9.) This finding is entirely consistent with the Policy provision regarding exclusion for any cause that may "seriously and adversely affect Freddie Mac's programs or business interests." Thus, it is irrelevant that Plaintiffs were not found to have engaged in fraud or that Freddie Mac could have taken other steps to prevent acquisition of these loans in the future. Plaintiffs' contentions that their conduct was legal and that they had no duty to comply with Freddie Mac's policies

---

7. Despite the parties' dispute over the proper use of the term "originator" discussed above, it is undisputed that Freddie Mac was using the term here to refer to Plaintiffs as the entities who had prearranged refinancing agreements with their borrowers at the time their loans were funded.

ignore the practical reality that their strategy had a significant negative impact on Freddie Mac's activities in the secondary mortgage market. Given that adverse effect, Freddie Mac was entitled to place them on the Exclusionary List pursuant to the terms of its Exclusionary Policy.

Finally, Plaintiffs assert that Freddie Mac's practice is unjustified given the fact that it has essentially put them out of business. In balancing this impact against the utility of Freddie Mac's practice, all the evidence before the Court shows that Plaintiffs' repetitive refinancing strategy poses a threat to the predictability and marketability of Freddie Mac's Participation Certificates as investment products in the secondary mortgage market. In contrast, Freddie Mac's use of the Exclusionary List to reduce this risk helps ensure that its Participation Certificates provide a predictable and attractive investment opportunity. This stability has important benefits, as it is undisputed that Freddie Mac's participation in the secondary market provides funds to mortgage lenders and thereby lowers interest rates and reduces costs for borrowers. Given these benefits, it cannot be said that Freddie Mac's use of the Exclusionary List in this case is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. Accordingly, Freddie Mac is entitled to summary judgment on Plaintiffs' unfair competition claim.

## C. Defamation

Finally, Plaintiffs allege that there are genuine issues of material fact on their defamation claim. In order to establish a claim for defamation, Plaintiffs must prove that Freddie Mac intentionally published a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage. Cal. Civ. Code § 45; *Ringler Assocs., Inc. v. Mary-*

*land Cas. Co.,* 80 Cal.App.4th 1165, 1179, 96 Cal.Rptr.2d 136, 148 (Ct.App.2000). They claim that they were defamed by being put on the Exclusionary List because it is a fraud list and they have never been found to have engaged in fraud.

Freddie Mac contends, however, that the list is a publication subject to the common interest privilege codified at Cal. Civ.Code § 47(c). The common interest privilege is a qualified privilege that applies to a publication made without malice if "the communicator and the recipient have a common interest and the communication is of a kind reasonably calculated to protect or further that interest." *Williams v. Taylor,* 129 Cal.App.3d 745, 751, 181 Cal.Rptr. 423, 426 (Ct.App.1982). The privilege applies to a defendant acting to protect a pecuniary or proprietary interest and between parties in a contractual, business, or similar relationship. *Kashian v. Harriman,* 98 Cal.App.4th 892, 914, 120 Cal.Rptr.2d 576, 593 (Ct.App.2002).

"Application of the privilege involves a two-step analysis. The defendant has the initial burden of showing the allegedly defamatory statement was made on a privileged occasion, whereupon the burden shifts to the plaintiff to show the defendant made the statement with malice." *Id.* at 915, 120 Cal.Rptr.2d at 594 (citations omitted). Malice is defined as " 'a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy or injure another person.' Malice may also be established by showing that defendants 'lacked reasonable grounds to believe the statement true and therefore acted with reckless disregard for plaintiff's rights.' " *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,* 173 F.3d 725, 736 (9th Cir.1999) (internal citations omitted) (quoting *Lundquist v. Reusser,* 7 Cal.4th 1193, 1204, 31 Cal.Rptr.2d 776, 782, 875 P.2d 1279 (1994); *Cuenca v. Safeway San*

*Francisco Employees Fed. Credit Union,* 180 Cal.App.3d 985, 997, 225 Cal.Rptr. 852, 858 (Ct.App.1986)). Malice may not be inferred, however, from the communication itself. *Noel v. River Hills Wilsons, Inc.,* 113 Cal.App.4th 1363, 1370, 7 Cal.Rptr.3d 216, 221 (Ct.App.2003). The existence of the privilege is a question of law for the court. *Kashian,* 98 Cal.App.4th at 915, 120 Cal.Rptr.2d at 594.

 Even assuming that the list constitutes the publication of a false statement of fact, Plaintiffs do not contest that the privilege is applicable to the list and it is therefore their burden to show that Freddie Mac made the publication with malice. Attempting to meet this burden, they first repeat their argument that Freddie Mac placed them on the list even though it found that they had not committed fraud. This argument, however, merely points to the allegedly defamatory communication itself and is therefore insufficient to meet Plaintiffs' burden of proof regarding malice. *See Noel,* 113 Cal.App.4th at 1370, 7 Cal.Rptr.3d at 221. Instead, all the evidence before the Court indicates that Freddie Mac placed them on the list after careful consideration and determination that placement was consistent with the Exclusionary Policy. Plaintiffs cite no evidence that the Freddie Mac's investigation was reckless or that it otherwise lacked reasonable grounds to believe the truth of its statement that Plaintiffs lack the integrity or business capability reasonably expected from those with whom it does business.

Similarly, Plaintiffs have presented no evidence to support their theory that Freddie Mac put them on the Exclusionary List simply to shift blame onto them. Plaintiffs have failed to meet their burden of establishing a genuine issue of material fact. Accordingly, Freddie Mac is entitled to summary judgment as a matter of law on Plaintiffs' defamation claim.

**CONCLUSION**

For the foregoing reasons, Freddie Mac's motion for summary judgment is granted.

IT IS SO ORDERED.